IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| HM FLORIDA-ORL, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| THE STATE OF FLORIDA, | ) | |
| ON DESANTIS, in his official         , and | ) | COMPLAINT FOR VIOLATIONS OF THE |
| and individual capacity as Governor | ) | CIVIL RIGHT ACT OF 1871, 42 U.S.C. |
| of Florida, MELANIE GRIFFIN, in her | ) | Section 1983 |
| official capacity as Secretary of THE | ) | |
| STATE DEPARTMENT OF BUSINESS | ) | |
| AND PROFESSIONAL REGULATION, | ) | |
| STATE OF FLORIDA, | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH INCORPORATED MEMORANDUM OF LAW

The Plaintiff, HM FLORIDA-ORL, LLC, by and through counsel, moves this Honorable Court to issue a Temporary Restraining Order preventing Plaintiffs from enforcing the amendments and additions to Florida state statutes 509.261, 561.29, and 827.11:

### I. NATURE OF THE ACTION

1. This action is brought under 42 U.S.C. Section 1983 and is premised on the First and Fourteenth Amendments to the United States Constitution.

### II. SUBJECT MATTER AND JURISDICTION

2. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1343 on the grounds that the claims asserted herein arise under U.S.C. Sections 1983 and 1988.

3. Venue is proper in this Court and Division pursuant to 28 U.S.C. Section 1391 on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

### III. THE PARTIES AND PERSONAL JURISDICTION

4. Plaintiff, HM FLORIDA-ORL, LLC, is a Florida limited liability company registered in the State of Florida in Orlando, Florida since 2008 that is a restaurant and bar serving alcohol and presents drag show performances, comedy sketches, and dancing.

5. Defendant RON DESANTIS is the Governor of the State of Florida.  He is sued in his official capacity and individual capacity.  Defendant DESANTIS may be served with process at his office, 400 S Monroe St, Tallahassee, FL 32399.

6. Defendant MELANIE GRIFFIN is the Secretary of the State Department of Business and Professional Regulation for the state of Florida.  She is sued in her official capacity and individual capacity.  Defendant GRIFFIN may be served with process at at her office, 2601 Blairstone Rd, Tallahassee, FL 32399.

7. Defendant STATE OF FLORIDA may be served with process via service upon the Secretary of State at 500 S. Bronough St., Tallahassee, Fl. 32399.

8. All Defendants are collectively referred to hereinafter as "the State".

### IV. FACTUAL ALLEGATIONS

**Florida Governor and Legislators Fight to Prevent Family Friendly Drag Show**

9. In December 2022, the State of Florida began administrative proceedings with the Department of Business and Professional Regulation for violating public nuisance, lewd activity

and disorderly conduct laws.  One business is a hotel associated with a performance center, and another is a performing arts center, which both hosted an event entitled, "A Drag Queen Christmas", and the other is a restaurant that hosted a drag queen weekend brunch.  DBPR is seeking to revoke the liquor licenses of these businesses.[1]  The venues are accused to failing to provide notice of the "sexually explicit nature of the performance" DBPR alleges that the "sexually explicit show" would constitute a public nuisance, lewd activity, and disorderly conduct when minors are in attendance.[2] Revocation of their liquor license was one of the penalties the venues would suffer.  The allegations are that drag shows are tantamount to "lewd exhibition, operating a lewd establishment, public exposure, obscene exhibition, breach of the peace and public nuisance.[3] The case is pending.

10.  On May 17, 2023, Governor Desantis signed into law an amendment to Florida Statute 509.261 to include the following provisions:

> (10)(a) The division may fine, suspend, or revoke the license of any public lodging
> establishment or public food service establishment if the establishment admits a
> child to an adult live performance, in violation of s. 827.11.

---

[1] Tampa Bay Times, Ana Ceballos and Joey Flechas, *Florida goes after liquor license of Miami hotel over drag show*, March 14, 2023, https://www.tampabay.com/news/florida-politics/2023/03/14/drag-queen-minors-liquor-license-lgbtq-hotel-miami/

[2] Administrative Complaint, *Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco, Petitioner, v. HRM Owner, LLC, d/b/a Hyatt Regency Miami*, March 14, 2023

[3] The statutes that were allegedly violated and listed in the complaint were:  Lew or lascivious exhibition in the presence of a minor less than 16 years of age (s. 800.04(7)(a), F.S.); Operation of any place, structure, building, or conveyance for the purposes of lewdness (s. 796.07(2)(a0, F.S.); The unlawful exposing or exhibiting of one's sexual organs in public or on the private premises of another in a vulgar or indecent manner (s. 800.03, F.S.); Knowingly promoting, conducting, performing, or participating in an obscene show, exhibition, or performance by live persons or a live person before an audience (s. 847.011(4), F.S.); Breach of the peace and disorderly conduct with acts that are of such nature as to corrupt the public morals, or outrage the sense of public decency (s. 877.03, F.S.); and Maintaining a nuisance by erecting or maintaining a structure that tends to annoy the community or injure the health or the community, or becomes manifestly injurious to the morals or manners of the people (s. 8230.5(1), F.S.)

(b) A violation of this subsection constitutes an immediate serious danger to the public health, safety, or welfare for the purposes of s. 120.60(6).

(c) Notwithstanding subsection (1), the division may issue a $10,000 fine for an establishment's second or subsequent violation of this subsection.

And also signed into law was:

Paragraph (1) of section 561.29, Florida Statutes, was amended to include the following language:

561.29 Revocation and suspension of license; power to subpoena. –

(1) The division is given full power and authority to revoke or suspend the license of any person holding a license under the Beverage Law, when it is determined or found by the division upon sufficient cause appearing of:

(1) Maintaining a licensed premises that admits a child to an adult live performance in violation of s. 827.11.

1. A violation of this paragraph constitutes an immediate, serious danger to the public health, safety, or welfare for the purposes of s. 120.60(6).

2. The division may issue a $5,000 fine for a first violation of this paragraph.

3. The division may issue a $10,000 find for a second or subsequent violation of this paragraph.

And Section 827.11 Florida Statutes was created to read:

827.11 Exposing children to an adult live performance. –

(1) As used in this section, the term:

(a) "Adult live performance" means any show, exhibition, or other presentation in front of a live audience which, in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, specific sexual activities as those terms are defined in s. 847.011, lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts when it:

1. Predominantly appeals to a prurient, shameful, or morbid interest;

2. Is patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present; and

3. Taken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present.

(b) Knowingly" means having general knowledge of, reason to know, or a belief or ground for belief which warrants further inspection or inquiry of both:

1. The character and content of any adult live performance described in this section which is reasonably susceptible of examination by the defendant; and

2. The age of the child.

(2) A person's ignorance of a child's age, a child's misrepresentation of his or her age, or a bona fide belief of a child's consent may not be raised as a defense in a prosecution for a violation of this section.

(3) A person may not knowingly admit a child to an adult live performance.

(4) A violation of subsection (3) constitutes a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

11.   Plaintiff's restaurant, HAMBURGER MARY'S, has for fifteen years presented drag performances at its venue.

12.   Plaintiff offers "family friendly" drag performances announced on Sundays where children are invited to attend.  There is no lewd activity, sexually explicit shows, disorderly conduct, public exposure, obscene exhibition, or anything inappropriate for a child to see.

13.   Drag is defined as "clothing more conventionally worn by the other sex, especially exaggeratedly feminine clothing, makeup, and hair adopted by a man"[4] Drag is usually performed as entertainment and often includes comedy, singing, dancing, lip-syncing, or all of the above. Prosthetic breasts are commonly used by men impersonating women as part of the art.

14. Drag is not a new art form; nor is it inherently – or even frequently – indecent.  Drag has been present in western culture dating back to Ancient Greek theatrical productions, where women were often not permitted to perform onstage or become actors.  Instead, male actors would don women's attire and perform the female roles.[5]

15. The earliest productions of William Shakespeare's plays also featured male actors in drag playing the female roles.[6]

16.  By the 1800s, "male or female impersonation" was known as "drag".

---

[4] *Drag*, OxfordLearnersDictionary.com, https://www.oxfordlearnersdictionaries.com/us/definition/english/drag_| (last visited March 25, 2023)

[5] Ken Gewertz, *When Men Were Men (and Women, Too)*, The Harvard Gazette (July 17, 2003), https://news.harvard.edu/gazette/story/2003/07/when-men-were-men-and-women-too/

[6] Lucas Garcia, *Gender on Shakespeare's State: A Brief History*, Writer's Theatre, (November 21, 2018), https://www.writerstheatre.org/blog/gener-shakespeares-stage-history/

17. The vaudeville shows of the late 1800s and early 1900s popularized drag, or "female impersonators."[7]  One of the most well-known vaudeville female impersonators, Julian Eltinge, made his first appearance on Broadway in drag in 1904.[8]

18. By 1927, drag had become specifically linked with the LGBTQIA community, and by the 1950s, drag performers began entertaining in bars and spaces that specifically catered to gay people.  In the decades that followed, drag solidified itself as an art form.[9]

19. Although drag is still centered around and holds special historical significance for the LGBTQIA community, the art form is now definitely a part of mainstream culture.  One is as likely to find straight people at a drag show as gay people.  RuPaul's Drag Race – a drag competition television show – has won seven Emmy Awards and is currently in its fifteenth season.  The show has spinoffs in the UK, Australia, Chile, Thailand, Canada, Italy, Spain, and elsewhere.

20. Like all forms of performance art, drag encompasses a vast spectrum of expression.  Every drag performer makes unique choices about attire, choreography, comedy, and music which can range from a performer in a floor-length gown lip-syncing to Celine Dion songs and making G-rated puns, to the Rocky Horror Picture Show, to sexual innuendo and the kind of dancing on could expect to see at a Taylor Swift or Miley Cyrus concert.

---

[7] Nan Alamilla Boyd, Wide Open Town: A History of Queer San Francisco to 1965, University of California Press, 2003.
[8] Michael F. Moore, Drag! Male and Female Impersonators on State, Screen, and Television:  An illustrated World History, McFarland & Company, 1994.
[9] Nan Alamilla Boyd, Wide Open Town: A History of Queer San Francisco to 1965, University of California Press, 2003.

21. Modern drag performances typically do not contain nudity.   More often than not, drag performers wear more clothing than one would expect to see at a public beach, and many drag shows are intended to be appropriate for all ages.

22. The Sunday Brunch drag show at Hamburger Mary's has traditionally hosted gay, straight, couples, married couples, children, and grandchildren, as it is a wholesome form of art and entertainment. It is a form of family entertainment, enjoyed by all.

23. Undercover state agents were sent by the administration of Republican Florida Gov. Ron DeSantis to spy on an Orlando drag show — and they found nothing "lewd" about it, according to the Miami Herald. Yet, Florida has moved to revoke the venue operator's liquor license, alleging in an official complaint that the venue violated state law "by allowing performers to expose genitals in a lewd or lascivious manner and by conducting acts simulating sexual activity in the presence of children younger than 16 years of age."[10]

24. Undercover agents who attended the December 28, 2022 show titled, "A Drag Queen Christmas," at Orlando's Plaza Live recorded the performance on their state-issued iPhone's and spotted three children at the drag show, according to the Herald, which obtained and published an incident report from the agents. "Besides some of the outfits being provocative (bikinis and short shorts), agents did not witness any lewd acts such as exposure of genital organs," the agents wrote in their report, according to the newspaper. "The performers did not have any physical contact while performing to the rhythm of the music with any patrons."[11]

---

[10] Miami Herald reports undercover agents saw nothing 'lewd' at Orlando drag show. Florida is going after venue anyway : r/Miami (reddit.com)

[11] DeSantis Admin Sent Undercover Agents to Drag Show, Found Nothing 'Lewd' (businessinsider.com)
https://www.businessinsider.com/desantis-florida-undercover-agents-drag-show-found-nothing-lewd-2023-3

25. It is apparent from the actions of the State of Florida, that it intends to consider drag shows to be a public nuisance, lewd, disorderly, sexually explicit involving public exposure and obscene and that it is necessary to protect children from this art form, in spite of evidence to the contrary. Such is the Summary Analysis of the Florida Senate when it passed the law signed by Governor Desantis.[12]

26.  Florida already has on its books, laws preventing exposure of minors to lewd, sexually explicit, obscene, vulgar or indecent displays. Florida Statute Chapter 847 and the power to revoke licenses of establishments that are maintaining a nuisance on the premises in Florida Statute 561.29.

27. The law, as passed, intends to use the FDBP to revoke or suspend the licenses of businesses if it admits a child to an adult live performance, in violation of s. 509.261[13] It reads:  (10)(a) The division may fine, suspend, or revoke the license of any public lodging establishment or public food service establishment if the establishment admits a child to an adult live performance, in violation of s. 827.11. (b) A violation of this subsection constitutes an immediate serious danger to the public health, safety, or welfare for the purposes of s. 120.60(6).

28.  Upon the announcement that the bill had been signed and the law was in effect, Hamburger Mary's advised its customers that children would not be permitted to attend any drag shows. Immediately, 20% of their bookings cancelled for the May 21, 2023 show and for future bookings. In addition to the loss of customer's cancelling, the establishment has had to ban children from the family friendly performances because they simply cannot take the chance that their business or liquor licenses would be suspended for hosting a drag show where children attend. In addition, the

---

[12] Text of Bill Analysis and Fiscal Impact Statement, The Florida Senate, SB 1438
[13] Text of 509.261)10)(a) Florida Statutes for Revocation or suspension of licenses; fines; procedure.

criminal penalties of the law put individuals at risk of prosecution because of the content of their speech. Also recently, the Port St. Lucie Pride event was forced to cancel the parade due the pending state law restricting drag performances.[14] The Florida Gay Pride Parade was canceled by the Pride Alliance of the Treasure Cost in anticipation of the signing of the laws complained of in this Complaint.[15] Florida City canceled it Pride Parade that has traditionally been part of Pridefest in response to the anticipated law.[16] The law and anticipation of it has had a chilling effect upon free speech in Florida.

## V. CAUSES OF ACTION

## COUNT 1 – VIOLATION OF 42 U.S.C. SECTION 1983 UNDER THE FIRST AMENDMENT

29. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

30. The statute is facially unconstitutional under the First Amendment for several reasons.

31.  First, the statute is not content-neutral, and is therefore subject to strict scrutiny.  It prohibits protected speech based on the identity of the speaker. *City of Austin v. Reagan National Adver. Of Austin, LLC.*, 142 S. Ct. 1464, 1471 (2022).

   a.  "To survive strict scrutiny analysis, a statute must**: (1) serve a compelling governmental interest; (2) be narrowly tailored to achieve that interest; and (3) be the least**

---

[14] https://news.yahoo.com/florida-city-scales-back-pride=160251520.html.
[15] https://www.nbcmiami.com/news/local/florida-gay ...
[16] https://people.com/politics/florida-pride-parade-canceled-anit-drag-bill

**restrictive means of achieving that interest.**" *Sable Communications of Cal, Inc. v. Fed Communications Commission,* 482 U.S. 115, 126, 109 S.Ct. 2829, 2836, 106 L.Ed. 2d 93 (1989).

b. Plaintiff concedes that the Supreme Court has held that "there is a **compelling interest** in protecting the physical and psychological well-being of minors." *Sable,* 492 U.S. at 126, 109 S.Ct. at 2836.

c. **The statute, however, is not tailored narrowly enough** to satisfy the First Amendment's requirements. It is simply too vague and overbroad. The vagueness doctrine was described by the U.S. Supreme Court as follows:

"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment. A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement. Although ordinarily a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech. But perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams,* ___ U.S. ___, 128 S.Ct 1830, 1845 (2008).

"What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal

culpability to whether the defendant's conduct was 'annoying' or 'indecent' wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id* at 1846.

1. The language used in the statute is meant to be and is primarily vague and indistinct. It does not mention "drag" by name but it is so broad as to include this art form in the State's interpretation under the newly created or amended laws in question.

2. Any person under the age of eighteen is included. The definition in 827.11(1)(b) of "Knowingly" necessarily requires an accused person to determine if the material is "patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present". Requiring Plaintiff to consider the age of the child, then determine what the prevailing standards are in the adult community, then determine what is suitable material or conduct for the age of the child, is overly broad and susceptible of interpretation if the person accused of exposing the minor to "adult live performances" is required to figure out if they are impermissibly doing so to any minor, or one that will be less or more affected by the performance. Each patron who looks to be under the age of eighteen would have to be examined to determine their level of maturity and how any drag performance might affect them in order for the management to determine if the material is suitable for the child, considering only the child's age, according to the statute. The definition requires the person accused to examine the character and content of the performance to determine if it is "reasonably susceptible of examination" for further inspection or inquiry, taking into consideration only the age of the child. The standard is too vague to know what is and what is not statutorily permissible. See *ACLU v. Ashcroft,* at 322 F.3d 255.

3. 827.11(1)(a) describes "adult live performance" in part to be "patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable

material or conduct for the age of the child present;" This language is impermissibly vague. Plaintiff will be forced to guess at the bottom end of the range of ages of children to which the statute applies and thus will not have "fair notice of what conduct would subject them to criminal sanctions" under the law and "will be deterred from engaging in a wide range of constitutionally protected speech." *ACLU v. Ashcroft*, at 322 F.3d at 268. . "Adult live performance" as defined in the bill defines the prohibited conduct by the identity of the speaker.[17] "Lewd conduct" is part of the definition. It is a vague term subject to interpretation. A man, dressed as a woman wearing a prosthetic breast, reading books to children of five years of age, may qualify to some as lewd conduct, simply because the message of the sender in how they are dressed.

4. The definition of "child" as is commonly used, and as is applied in the statute is overinclusive because it "broadens the reach of 'material that is harmful to minors' under the statute to encompass a vast array of speech that is clearly protected for adults – and indeed, may not be obscene as to older minors. . . ." *Id* at 268, *American Civil* at 206. 8. The definition of "child" is not specifically set forth in the statute, however, the common meaning under Florida law is an individual who has not yet reached the age of eighteen years. The statute does not distinguish between a child of 4 and a person of 17 ½. The term is synonymous with "minor". Use of the term "minor" has previously been determined to be not narrowly tailored enough to satisfy First Amendment requirement. *American Civil Liberties Union v. Ashcroft*, 332 F. 3d 240, 255 (3rd Cir. 2003), *aff'd Ashcroft v. American Civil Liberties Union,* 542 U.S. 656, 12 S.Ct. 2783, 159 L.Ed.2d 690 (2004).

---

[17] Florida Statute 827.11(1)(a)

5. Furthermore, the inclusion of "community standards" exacerbates the constitutional problems for the statute in that it further widens the spectrum of protected speech that the statute affects. It requires the most restrictive and conservative state's community standards in order to avoid criminal liability. *Id* at 270. "Community standards" has been found to be unconstitutionally overbroad. *ACLU v. Reno*, 217 F.3d 162, 173 (3rd Cir. 2000).

6. The conduct that is offensive must "predominately appeal to a prurient, shameful, or morbid interest; and is patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present; and taken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present.". [18] The terms "predominately", "shameful or morbid" are vague terms subject to the interpretation of the reader and not subjective. What is suitable material or conduct for the age of the child present is too indistinct for the speaker to know what is prohibited. Again, some might consider a man in a dress reading to five years told to be unsuitable conduct.

7. "Patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present" is similarly vague and indistinct as standards in different parts of the state differ, as do what is suitable material for different aged children. [19] This is not a subjective standard subject to identification by the reader as to what is prohibited.

8. FS 827.11(1)(b) requires the Plaintiff to make a determination of the "character and content of the adult performances" they intent to produce and "the age of the child." This is

---

[18] Florida Statute 827.11(1)(a)1
[19] Florida Statute 827.11(1)(a)2

impermissibly overbroad. Simply stated, what might be inappropriate for a child of five to see is not necessarily inappropriate for a minor of seventeen years.

9. "Without serious literary, artistic political or scientific value for the age of the child present." [20] This obligation cannot be met by a subjective standard. Seeing a performer in clothing not gender usual, dancing and singing, may be perfect for a two year old to see, but by whose standard is this decision to be made? The reader is only made to guess what conduct is prohibited.

d. The burden is on the Government to prove that the statute contains **the least restrictive alternatives** to accomplish the aims of the legislation. *Ashcroft v. ACLU,* 542 U.S. at 665, 124 S.Ct. at 2791. "[T]he burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute." *Id.* Citing *Reno v. ACLU*, 521 U.S. 844 at 874, 117S.Ct. at 2346. The wide swath with which Florida Statute 827.11 is painted captures all persons under the age of eighteen under the umbrella of the State's intent to protect minors without definition of how the age of the child applies to general knowledge of or belief that warrants further inspection or inquiry of whether the intended performance is prohibited.

32. "Laws that cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys. Those laws, like those that are content based on their face, must also satisfy strict scrutiny." *Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015).

33. An examination of similar legislation was conducted by the United States District Court for the Western District of Tennessee, Western Division in the recent case of *Friends of George's, Inc. v. State of Tennessee, et al.* 2:23-cv-02163-TLP-tmp and 2:23-cv-02176-TLP-tmp where a

---

[20] Florida Statute 827.11(1)(a)3

temporary restraining order was entered against a state law criminalizing the performance of "adult cabaret entertainment" in any location that it could be viewed by a person not an adult.  The constitutional evaluation is instructive and relied upon herein.

34.   The First Amendment generally prevents states from limiting speech and expressive conduct based on the ideas expressed. *Texas v. Johnson*, 491 U.S. 397, 406 (1989). So, content-based regulations are presumptively invalid. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). In *Reed v. Town of Gilbert*, the United States Supreme Court observed that there are two ways to determine whether a law is content-based regulation.  576 U.S. 155, 163-64 (2015).  First, a law is content-based on its face by "defining regulated speech by particular subject matter." *Id*.  Second a law may appear to be content-neutral on its face but courts consider it to be content-based if it was "adopted by the government 'because of disagreement with the message [the speech] conveys." *Id* at 164 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

35. Content-based regulations must survive strict scrutiny to be constitutional. *Reed*, 576 U.S. at 171 (2015).  This is an exceptionally high bar – it means that the law is presumptively unconstitutional. Id. The Court will only uphold the law if it is justified by a compelling government interest, and it is narrowly drawn to serve that interest. *Id*. At 175 (Breyer.J., concurring)(observing that strict scrutiny in speech cases is "almost certain legal condemnation").

36. If the State is to argue that the acts prohibited by the new laws are already codified in the statutes and the new laws are content-neutral, the United States Supreme Court precedent under *Reed* requires the Court to consider the legislative history of the suspect legislation. See *Reed,* 576 U.S. at 164.  It is apparent that the law was enacted because of a disagreement with a particular message or messenger. As stated herein, the Summary Analysis of the House and Senate bills cite as recent events the complaints filed by the DBPR against venues that hosted an event entitled, "A

Drag Queen Christmas". It is unquestionable that the State's interest is to stop children from attending drag events at restaurants, performances, bars, and any other events. As such, the statute is view-point discriminatory because it targets drag queens.

37.  The United States Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983).  A law is unconstitutionally vague if individuals of "common intelligence must necessarily guess at its meaning and differ as to its application[.]" *Conally v. Gen. Const. Co.*, 269 U.W. 385 (1926).  A law is unconstitutionally overbroad if it sweeps in more speech than is necessary to satisfy the state's interest, regulating both protected and unprotected speech. See *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).  The United States Supreme Court has described the overbreadth doctrine as a "strong medicine," that justifies invalidation of laws that can chill the effects of speech through self-censorship on the regulated, and can spark the harms of selective enforcement on the regulator. *Id.* At 613; *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)(noting that overbreadth and vagueness doctrines check the legislature's need to establish minimal guidelines to govern law enforcement to avoid a standardless sweep of enforcement).

38.  The statute prohibits what is described as adult live performances, which would include female impersonators, by implication, anyplace in the state.  Even though businesses are targeted in Section 509.261, the law also creates Florida Statute 827.11 to apply anywhere in the state, such as a public parade, or a person's back yard. As was pointed out by the United States District Court, Western District of Tennessee in *Friends of George's, Inc., v. State of Tennessee, et al*, 2:23-cv-02163-TLP-tmp, in granting its temporary restraining order on March 31, 2023, "What if a minor browsing the worldwide web from a public library views an adult live performance?  Ultimately, the Statute's broad language clashes with the First Amendments' tight constraints."

39. While the evidence of lewd conduct at "A Drag Queen Christmas" was not substantiated by the undercover state agents who attended (see above), this has not stopped the State from enacting the proposed law with the intent of stopping drag performances anywhere in Florida, using the alleged lewd conduct of "A Drag Queen Christmas" as its motivation. The State's rationale would stop any performance of Victor/Victoria, La Cage Aux Folles, Milton Berle, I Love Lucy, or Some Like It Hot, all American performance staples where the characters perform in clothing usually worn by the opposite sex. Any suggestion that the outfit a person wears is necessarily harmful to a child strains credulity.

40. The application of the statute as written is so broad as to have a chilling effect on protected speech.

41. "The severity of criminal sanctions may well cause speakers to remain silent rather than communicate even arguable unlawful words, ideas, and images. As a practical matter, this increased deterrent effect, coupled with the risk of discriminatory enforcement of vague regulations, poses greater U.S. Const. Amend I concerns that those implicated by certain civil regulations." Reno v. ACLU, 521 U.S. 844, 872 (1997).

42. The amendments to Florida Statute Section 827.11, Florida Statutes, also open up any establishment – or even a private home – that hosts drag shows to police raids, so law enforcement can be certain that no children are present at the event.

**This Law Will Violate the Constitutional Rights of Plaintiff, HM FLORIDA-ORL, LLC**

43. The uncertainty about what specific conduct this law prohibits, as well as the threat of police surveillance and criminal charges, is precisely what concerns the Plaintiff in this case.

44. Since its opening in 2008, Hamburger Mary's has hosted drag-centric performances, comedy sketches, bingo, trivia, and dancing. Traditionally, their performances have been open to all ages.

45. Hamburger Mary's is recognized by the LGBTQIA and the straight communities as supplying family friendly entertainment. At such times, as the entertainment is not suitable for children, children are not allowed to attend and the venue announces this in advance on their website and in their advertising.

46. The family drag shows have been cancelled. They cannot take place if the law is allowed to stand. Plaintiff will suffer deprivation of its First Amendment rights.

47. As alleged above, the State seeks to explicitly restrict, or chill speech and expression protected by the First Amendment based on its content, its message, and its messenger. The statute is therefore "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. at 163.

48. This statute cannot survive strict scrutiny. While the government has a recognized interest in "protecting children from harmful materials," Florida law already protects children from obscenity and sexually explicit conduct and materials. Florida Statutes Chapter 847.

49. Legislators and the Governor have made it clear that this law was created to prevent children from drag shows. The government does not have a compelling interest in protecting children from drag shows.

50. Even if the State could identify a compelling interest, this law is far from narrowly tailored. It is broad enough to encompass even the most innocent drag performances, to reach into the

private homes of Florida citizens, and to determine on behalf of parents what is and is not appropriate entertainment for their children.

51. The broad, sweeping nature of the statute, and the vagueness regarding what conduct is and is not prohibited, will have a chilling effect on the First Amendment rights of the citizens of Florida.

**A Temporary Restraining Order in necessary to prevent harm to free speech**

52. Plaintiff acknowledges that a Temporary Restraining Order is an extraordinary remedy. Courts issue TROs to "preserve the status quo so that a reasoned resolution of a dispute may be had." *Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 227 (6th Cir. 1996). As such Plaintiff has the burden of showing they are entitled to a preliminary injunction. *See Jones v. Caruso,* 569 F. 3d 258, 265 (6th Cir. 2009).

53. Courts consider TRO motions under the same four-factor test for preliminary injunction motions: **(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable harm absent a TRO, (3) whether granting a TRO would cause "substantial harm" to others, and (4) whether the public interest would be served by the issuance of a TRO.** *See Ohio Republican Party v. Brunner,* 543 F.3d 357, 361 (6th Cir. 2008). In cases about a constitutional challenge to a state law, "the first factor [likelihood of success on the merits] is typically dispositive." *Vitolo v. Guzman,* 999 F.3d 353, 360 (6th Cir. 2021). And the third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009).

54. In order to conduct a review of the four factors as applied to this case, Plaintiff first must show Article III **standing**, that it has suffered an injury in fact – a legally protected interest that is

concrete, particularized, and actual or imminent, that Defendants likely caused the injury, and that judicial relief would likely redress the injury. *Lujan v. Def. of Wildlife,* 504 U.S. 555, 560-61 (1992). The United States Supreme Court has held that overbreadth challenges to a statute restricting free speech justify a "lessening of prudential limitations on standing." *Sec'y of State of Md. V. Munson,* 467 U.S. 947, 956-57 (1984).

a. The fact that the statutes are both vague and overly-broad indicates that Plaintiff has suffered an actual, concrete, and particularized injury in that it has a reasonable fear of prosecution for conducting shows similar to those it has performed in the past, which may be punishable by the statutes with criminal effect. Plaintiff is unable to advertise or put on shows that would admit minors due to the statutes. Plaintiff should not be required to eat the proverbial mushroom to find out whether it is poisonous. The law does not require this for standing.

b. If Defendants are saying they are not tasked with enforcement, Plaintiff would point out that the State Division of Hotels and Restaurants of the Department of Business and Professional Regulation is tasked with enforcement in the Florida Statute 509.261. The criminal penalties are enforceable under the laws of the State of Florida, as Defendant. The statutes present a reasonable risk that both the Governor and Attorney General may investigate and criminally prosecute Plaintiff for hosting its performances. *See United States v. Stevens,* 559 U.S. 460 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."); *Virginia v. Am. Booksellers Ass'n, Inc.,* 484 U.S. 383, 393 (1988). ("The State has not suggested that the newly enacted [speech restriction] law will not be enforced, and we see no reason to assume otherwise . . . Further, the alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution").

55. **The likelihood is that Plaintiff will succeed on the merits**. The statute is content based regulation. The First Amendment generally prevents states from limiting speech and expressive conduct based on the ideas expressed. *Texas v. Johnson,* 491 U.S. 397, 406 (1989). So, content based regulations are presumptively invalid. *R.A.V. v. City of St. Paul,* 505 U.S. 377, 382 (1992). In *Reed v. Town of Gilbert,* the United States Supreme Court observed that there are two ways to determine whether a law is a content based regulation. 576 U.S. 155, 163-64 (2015). First, a law is content based on its face by "defining regulated speech by particular subject matter." *Id*. Second, a law may appear to be content neutral on its face but courts consider it to be content based if it was "adopted by the government 'because of disagreement with the message [the speech] conveys." *Id*. at 164 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

a. Content based regulations must survive strict scrutiny to be constitutional. *Reed*, 576 U.S. at 171 (2015). This is an exceptionally high bar – it means that the law is presumptively unconstitutional. *Id*. The Court will only uphold the law if it is justified by a compelling government interest, and it is narrowly drawn to serve that interest. Id. At 175 (Breyer, J., concurring)(observing that strict scrutiny in speech cases is "almost certain legal condemnation").

b. There is an argument that the statutes in question are not content based, but content neutral. Even content neutral regulation can be considered content based. Since there are already statutes on the books outlawing certain "lewd" behavior, the purpose of the amendments and additional statutes become a concern for the court. The statutes may be considered content neutral, but they should be considered a content based regulation "because of disagreement with the message [the speech] conveys." *Ward,* 491 U.S. at 791. If the statutes are facially content neutral, the United States Supreme Court precedent under Reed requires the Court to consider legislative history. *See Reed,* 576 U.S. at 164.

c.  An examination of the legislative history reveals in the Summary Analysis in both the House and Senate versions of the statute, that "according to recent news stories, at least three business with liquor licenses in the state are currently being administratively charged by DBPR with violating public nuisance, lewd activity and disorderly conduct laws.  One business is a hotel associated with a performance center, and another is a performing arts center, which both hosted an event entitled "A Drag Queen Christmas"; and the other is a restaurant that hosted a drag queen weekend brunch.  DBPR is seeking to revoke the liquor licenses of these businesses."[21]

d.  Undercover state agents were sent by the administration of Republican Florida Gov. Ron DeSantis to spy on an Orlando drag show — and they found nothing "lewd" about it, according to the Miami Herald. Yet, Florida has moved to revoke the venue operator's liquor license, alleging in an official complaint that the venue violated state law "by allowing performers to expose genitals in a lewd or lascivious manner and by conducting acts simulating sexual activity in the presence of children younger than 16 years of age."

e. Undercover agents who attended the December 28, 2022 show titled, "A Drag Queen Christmas," at Orlando's Plaza Live recorded the performance on their state-issued iPhone's and spotted three children at the drag show, according to the Herald, which obtained and published an incident report from the agents. "Besides some of the outfits being provocative (bikinis and short shorts), agents did not witness any lewd acts such as exposure of genital organs," the agents wrote

---

[21]Tampa Bay Times, Ana Ceballos and Joey Flechas, Florida goes after liquor license of Miami hotel over drag show, March 14, 2023, https://www.tampabay.com/news/florida=politics/2023/03/14/drag-queen-minors-liquor-license-lgbtq-hotel-miami/

in their report, according to the newspaper. "The performers did not have any physical contact while performing to the rhythm of the music with any patrons."[22]

      f. In spite of the evidence to the contrary that the drag show in question was not "lewd" or "inappropriate for children", the statute was passed and signed into law by the Governor. The lack of the statutes' purpose considering current state obscenity laws, along with the statutes' legislative history, it is likely that the court will be subjecting the statutes to strict scrutiny. As a result, Plaintiff has a sufficient likelihood of success on the merits of the case.

      g. The statutes are vague and overbroad. The United States Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) A law is unconstitutionally vague if individuals of "common intelligence must necessarily guess at its meaning and differ as to its application[.]" *Conally v. Gen. Const. Co.*, 269 U.S. 385 (1926). A law is unconstitutionally overbroad if it sweeps in more speech than is necessary to satisfy the state's interest, regulating both protected and unprotected speech. See *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). The United States Supreme Court has described the overbreadth doctrine as a "strong medicine," that justifies invalidation of laws that can chill the effects of speech through self censorship on the regulated, and can spark the harms of selective enforcement on the regulator. *Id*. At 613; *Kolender v. Lawson*, 461 U.S. 325, 358 (1983)(noting that overbreadth and vagueness doctrines check the legislature's need to establish minimal guidelines to govern law enforcement to avoid a standardless sweep of enforcement).

---

[22]DeSantis Admin Sent Undercover Agents to Drag Show, Found Nothing 'Lewd' (businessinsider.com)
https://www.businessinsider.com/desantis-florida-undercover-agents-drag-show-found-nothing-lewd-2023-3

h.  The statute tracks the same language from the state's existing regulations on adult oriented establishments, Florida Statutes Chapters 847 and 561.  The prohibitions added to Florida Statute 827.11 do not limit the offensive activity to businesses.  It reaches conduct of performers virtually anywhere.

56. Absent an injunction, Plaintiff will be barred by criminal penalties from engaging in protected First Amendment expression. Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S.Ct. 63, 67 (2020).("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes **irreparable injury**.") Because of the statutes' vagueness and overbreadth, it is unclear whether Plaintiff's allowing performances may be penalized.  If the drag shows occur and Defendants prosecute Plaintiff, it will likely suffer irreparable harm with criminal sanctions.  These penalties carry with them, among other things, potential loss of liberty and great reputational harm, not to mention denial of a means of livelihood by the suspension of Plaintiff's right to sell liquor or conduct its business. But even without enforcement, the vague and overly broad nature of the statutes can have a chilling effect on speech.

57. **Whether granting a TRO would cause "substantial harm" to others.**  The fifteen year history of Plaintiff's drag shows without incident and totally devoid of evidence to harm to children or any other person is proof enough that the granting of the TRO would not cause any harm to anyone.

58. **Whether the public interest would be served by the issuance of a TRO.** In spite of Defendants' suspected argument that the public has an interest in ensuring that its officials are not subject to an aimless injunction and to insure that children are not exposed to lewd and offensive performances, a TRO is required by law.  Since Plaintiff has been engaging in this type of speech for many years without incident, granting the TRO will cause no harm other than potential

dissatisfaction by some legislators and the Governor, who are under no obligation to attend the shows. Simply stated, there is no public interest in preventing children from seeing drag shows. There is no leap to be taken from a drag show performance to exposing children to lewd or improper displays.

59. The existing obscenity laws can prosecute most or all of the conduct that the statutes seek to regulate. Issuing a TRO merely preserves the status quo and benefits the public interest by clarifying the scope of a law that could impact the First Amendment Rights of Florida citizens and businesses.

WHEREFORE, Plaintiff demands a Temporary Restraining Order against Defendants and prays for the following relief:

1. Grant Plaintiff a Temporary Restraining Order and Preliminary Injunction preventing this unconstitutional statutes from taking effect;

2. Award Plaintiff its reasonable attorney's fees, pursuant to 42 U.S.C. Section 1988.

3. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure.

4. Grant the Plaintiff such further relief as the Court may deem just and proper.

I HEREBY CERTIFY that a copy of the foregoing has been furnished to the Defendants named herein via service of process with the Verified Complaint.

Respectfully submitted,

Gary S. Israel, Esq. 270709
121 S. Orange Avenue, Suite 1500
Orlando, Florida 32801

407 210-3834
attorneyisrael@hotmail.com
gsi55@hotmail.com
Counsel for Plaintiff