United States District Court Middle District of Florida
Orlando Division

HM FLORIDA-ORL, LLC,

        Plaintiff,

Case No. 6:23-cv-00950-GAP-LHP

v.

RON DESANTIS, et. al.,

        Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY INJUNCTION**

---

Plaintiff HM FLORIDA-ORL, LLC, (hereinafter "Plaintiff" or "Hamburger Mary's"), by and through its undersigned attorneys, and in response to Defendants' *Motion to Dismiss and Opposition to Plaintiff's Motion for Preliminary Injunction* (ECF 21) ("Motion to Dismiss"), states as follows:

## LAW AND ARGUMENT

### A.    Plaintiff has met the Iqbal-Twombly standard for stating a claim

To survive a motion to dismiss, Plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twomby*, 550 U.S. 544, 570 (2007)). The Complaint need not provide "detailed factual allegations," as long as the factual allegations are sufficient to establish plaintiff's entitlement to relief. *Twombly*, 550 U.S. at 555. Plaintiff has met this standard.

Minor formatting errors do not make Plaintiff's Complaint a "shotgun pleading." ECF 21 at PageID 177.[1] While the Complaint inadvertently misnumbers several paragraphs contained within Count I, the Complaint is certainly not "calculated to confuse the 'enemy' and the court." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Indeed, Defendant seems to have no trouble deducing or responding to Plaintiff's assertions that the Act is a content-based restriction on free speech; that the Act is not narrowly-tailored; that the Act is overbroad; that the Act was adopted for an impermissible purpose; that the Act is viewpoint discriminatory; and that the Act is unconstitutionally vague. ECF 21 at PageID 169-177. Defendant is able to identify each of Plaintiff's legal arguments, because Plaintiff clearly stated them in its Complaint.[2]

Plaintiff's Complaint also states specific facts that make its claims plausible:

1. Hamburger Mary's has hosted drag-centric performances, comedy sketches, bingo, trivia, and dancing since the establishment opened in 2008; ECF 1 at PageID 19.
2. These performances have been open to all ages; *Id.*
3. Some of these performances are arguably proscribed by the Act, which prohibits undefined "lewd conduct;" ECF 1 at PageID 12.
4. Since the Act took effect, Hamburger Mary's has been forced to self-censor and has placed age restrictions on nearly all of its drag shows; ECF 1 at PageID 19.

Accepting these facts as true, Plaintiff has alleged facts that make it plausible that the Act

---

[1] It is demonstrative of the weakness of Defendant's position that the State, with all of the resources available to it, resorts to claiming that typographical errors in Plaintiff's Complaint are a calculated strategy.

[2] *See* ECF 1 at PageID 10 ("The statute is not content-neutral, and is therefore subject to strict scrutiny;"); *Id.* at PageID 10 ("The statute, however, is not tailored narrowly enough to satisfy the First Amendment's requirements."); *Id.* at PageID 11 ("The language used in the statute is meant to be and is primarily vague and indistinct."); *Id.* at PageID 16 ("It is apparent that the law was enacted because of a disagreement with a particular message or messenger."); *Id.* at PageID 17 (The application of the statute as written is so broad as to have a chilling effect on protected speech.").

infringes on Plaintiff's First Amendment rights and impermissibly chills protected speech. There is no way for Plaintiff to be certain what "lewd conduct" is, or what the Act means when it prohibits "lewd exhibition" of "prosthetic breasts." Those terms are not defined in the Act. Thus, to protect its business and its employees, Plaintiff must censor its own speech or age-restrict its venue and in doing so has demonstrably lost business.[3]

### B. Plaintiff has Article III Standing, because Plaintiff Engages in Conduct that is Arguably Proscribed by the Act.

The State misunderstands Plaintiff's position when it claims Plaintiff has asserted that the performances it hosts include "no lewd activity, sexually explicit shows, disorderly conduct, public exposure, obscene exhibition, or anything inappropriate for a child to see." As Plaintiff has repeatedly stated, since 2008, Hamburger Mary's performance have "been open to all ages." ECF 1-1 at PageID 40. The establishment did not place age restrictions on admission, and trusted parents to decide whether or not a performance was appropriate for their children.

Only *after* the Act was signed into law did Hamburger Mary's place age restrictions on the majority of their drag performances – a decision which resulted in a 20% decrease in bookings. Children are currently only permitted to attend the Sunday brunch performances, which are censored to be appropriate for very young children, and often center around Disney movies and other child-centric entertainment. These Sunday performances, which Plaintiff states contain "no lewd activity," are the only performances Plaintiff feels it can now safely open to all ages without risking the future of the business.

---

[3] Plaintiff also notes that it is a restaurant, not primarily a drag performance venue. Compelling age restrictions deprives Plaintiff of customers with children who plan to simply eat for whom the performances are incidental.

Defendant's Motion to Dismiss puts the cart before the horse and argues that Plaintiff lacks standing because it cannot prove that it intends to violate the statute. However, Plaintiff's challenge to the Act is predicated on the fact that the Statute is so vague and overbroad that Plaintiff cannot know what precise conduct violates the Act and that its terms are so subjective that no one can be clear on precisely what they mean, thereby creating a chilling effect and enforcement risks that infringe on protected speech. The Act leaves terms such as "lewd conduct" and "lewd exhibition of prosthetic genitals or breasts" undefined. Plaintiff's understanding of "lewd" might be very different from what a police officer believes is "lewd." Is a Dolly Parton impersonator with prosthetic cleavage engaged in "lewd exhibition?" What about a drag performer dressed like an Orlando Magic cheerleader? Unable to discern what expression is prohibited by the Act, Plaintiff has no choice but to restrict its all-ages shows to "that which would be suitable for a sandbox." *Reno v. ACLU*, 521 U.S. 844, 875 (1997). If Plaintiff does not self-censor, it leaves the future of its business and the safety of its employees to the whims of law enforcement officers who have been given unilateral discretion to determine the meaning of "lewd." Awaiting a law enforcement officer's citation or proceedings to revoke their licensure "would lead to Plaintiff taking an enormous risk. It would have to eat the proverbial mushroom to find out whether it is poisonous." *Friends of Georges, Inc. v. Mulroy*, 2023 U.S. Dist. LEXIS 96766, *47, __ F.Supp.3d __ (W.D. Tenn. 2023) (citing *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979)).

Defendant's reasoning is circular, arguing, in essence, that Plaintiff's standing turns on the Act's constitutionality. The standing question before the Court is not whether, under Defendant's preferred construction, Plaintiff will violate the statute. The question is whether Hamburger Mary's conduct is "arguably proscribed" by the Act. *Susan B. Anthony List v. Driehous*, 573 U.S.

149, 162 (2014). The answer is a resounding yes. Plaintiff has Article III standing to bring this case.

## C. The Act is Unconstitutional

### 1. The Act is Facially Content Based and is Presumptively Unconstitutional.

"A regulation of speech is facially content-based under the First Amendment if it 'targets speech based on its communicative content' - that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Adver. Of Austin, LLC.*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed v. Town of Gilbert*, 576 U.S.155, 163 (2015)). Content-based restrictions are "presumptively unconstitutional, and "can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed v. Town of Gilbert*, 576 U.S. at 163.

Fla. Stat. § 821.11 is facially a content-based restriction. It regulates speech and expression which "in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001, lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts[.]" The Act plainly "defin[es] regulated speech by subject matter," and is therefore subject to strict scrutiny. The prohibited conduct cannot be defined without referencing the content of the speech. and is thus presumptively unconstitutional.

Nor is the regulated speech and expression "unprotected by the First Amendment." ECF 21 at PageID 170. Speech that is truly obscene – that is, speech that fails under the three-prong test in *Miller v. California*, 43 U.S. 15, 24 (1973) – is unprotected by the First Amendment. But only a very narrow category of speech qualifies as legally obscene. *See Ashcroft v. Free Speech*

*Coalition*, 535 U.S. 234 (2002) (Holding that, while actual child pornography is obscene, virtual or simulated child pornography is protected under the First Amendment, and the government may not ban the latter in an effort to ban the former). Simply because a performance is inappropriate for children does not strip the performance of its protections under the First Amendment; that performance is still protected speech for adults. Any law that restricts protected speech based on its content must fail unless it can satisfy strict scrutiny. *Reed v. Town of Gilbert*, 576 U.S. at 163.

### 2. Alternatively, the Act was Enacted Specifically to Target Drag.

"Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Reed v. Town of Gilbert*, 576 U.S. at 167 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). If the Court finds that the Act is facially content-neutral, but that "an impermissible purpose or justification" underpins the law, then the law is still subject to strict scrutiny.

The text of the Act is "the best indicator of intent." *Nixon v. United States*, 506 U.S. 224, 232 (1993). The text of Fla. Stat. 827.11 demonstrates that the Act was "adopted by the government because of disagreement with the message the speech conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). While many terms in the Act appear elsewhere in the Florida code, "lewd exposure of prosthetic or imitation genitals or breasts" is unique to the Act. There are two primary categories of people who wear prosthetic breasts: people who have had mastectomies and drag performers. Since the Act specifically regulates "any show, exhibition, or other presentation in front of a live audience," the law is obviously targeted at the conduct of *performers* who wear prosthetic breasts. It targets drag performers.

Governor DeSantis, who signed the Act into law on May 17, 2023, stated just before signing the bill that the law was about "adult performances, like these drag shows" and described drag as "sexually explicit" and "adult entertainment." While Plaintiff maintains that the text of the Act is sufficient to demonstrate impermissible purpose, statements from the Governor and from legislators further support that the Act was adopted by the State to target drag, because the State disagrees with the message drag conveys. Thus, even if the law is facially neutral, it is still subject to strict scrutiny.

### 3. The Act is Not Narrowly Tailored.

The statute regulates, in part, "adult live performances." The definition of "adult live performances" is as follows:

Fla. Stat. 827.11

> (a) "Adult live performance" means any show, exhibition, or other presentation in front of a live audience which, in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 847.001, lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts when it:
>
>   1. Predominantly appeals to the prurient, shameful, or morbid interest;
>
>   2. Is patently offensive to the prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present; and
>
>   3. Taken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present.

This definition pulls much of its language from *Miller v. California*, 43 U.S. 15, 24 (1973). In *Miller*, the Supreme Court set forth a test to determine whether speech is legally "obscene," and thus unprotected under the First Amendment. The three-prong test controls to this day:

> 1) Whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest;

2) Whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

3) Whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value.

Crucially, the challenged Act does not regulate "obscenity" within the meaning of *Miller*. It regulates something more – content the government contends is indecent for children, but which is still protected speech for adults. Thus, the government bears the burden of proving that the law is narrowly tailored – that the government has chosen the least restrictive means to achieve its compelling interest in protecting children.

Here, the government has not chosen the least restrictive means of regulating inappropriate content for minors. For example, the Act contains no exception for parental consent, which the Supreme Court has repeatedly taken issue with. In *Ginsburg v. New York*, 390 U.S. 629 (1968), the Court upheld a law prohibiting the sale of "girlie magazines" to minors under the age of 17, in part because "the prohibition against sales to minors does not bar parents who so desire from purchasing the magazines for their children." *Id.* The Supreme Court specifically distinguished the contested statute in *Reno* from that in *Ginsburg*, finding that user-based software that parents could use to "prevent their children from accessing material which the *parents* believe is inappropriate" was a sufficient alternative to the criminal statute. *Reno v. ACLU*, 521 U.S. at 877 (emphasis original). This Statute provides no such affirmative defenses to performers. The State has stripped parents of the power to determine whether a live performance is appropriate for their child. If parental monitoring was a sufficient alternative to regulating internet pornography, it is certainly a sufficient alternative to regulating the far broader category of expression that falls under whatever the State arbitrarily interprets as "lewd conduct."

### 4. The Act is Overbroad and Vague.

Finally, the Act is unconstitutionally overly-broad and vague. The Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983). Overly vague laws are unconstitutional for three reasons. First, due process requires that a law provide "persons of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Second, the law must provide "explicit standards" to law enforcement officials, judges, and juries so as to avoid "arbitrary and discriminatory application." Third, a vague statute can "inhibit the exercise" of First Amendment freedoms and may cause speakers to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford*, 408 U.S. 104, 108-9 (1972). This law fails on all three counts. A law is unconstitutionally overbroad if it sweeps in more speech than is necessary to satisfy the state's interest, regulating both protected and unprotected speech. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).

The Act also does not provide Plaintiffs with a reasonable opportunity to know what conduct is prohibited. As previously discussed, the legislature left several terms undefined, including "lewd conduct" and "lewd exposure of prosthetic or imitation genitals or breasts." More disturbingly, this law does not provide the "precision and guidance necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *FCC v. Fox Tv Stations, Inc.*, 567 U.S. 239, 253 (2012). This statute opens up any of Plaintiff's performances to police surveillance, sting operations, and raids, so that law enforcement can be certain that the performance is appropriate "for the age of the child[ren] present."

"The strictness of the vagueness scrutiny is proportionate to the burden that the law imposes on those whom it regulates. When speech is involved, rigorous adherence to the fair-

notice requirements is necessary to ensure that ambiguity does not chill protected speech." *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 422 (6th Cir. 2014). This law has already chilled the protected speech of Plaintiff, a small business that has been forced to exclude minors from all of its weekly drag performances except one. Hamburger Mary's has no choice but to tailor its Sunday all-ages performances to only what is suitable for very small children. If Plaintiff does not self-censor, it risks losing its liquor license, and its employees could face criminal charges. For Plaintiff, this law imposes a heavy burden indeed.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

Respectfully submitted.

*/s/ Brice M. Timmons*
Brice M. Timmons, Esq. *Pro Hac Vice*
Melissa J. Stewart, Esq. *Pro Hac Vice*
DONATI LAW, PLLC
1545 Union Ave.
Memphis, TN 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com
melissa@donatilaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served upon all parties to this action via the court's ECF filing system this 15th day of June 2023.

*/s/ Brice M. Timmons*