**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

George C. Young Federal Annex Courthouse
Office of the Clerk
401 West Central Blvd
Orlando, FL 32801
(407) 835-4200
www.flmd.uscourts.gov

**Elizabeth M. Warren**                                                    **Richard BAnke**
Clerk of Court                                                      Orlando Division Manager

**DATE:** June 28, 2023

**TO:**     Clerk, U.S. Court of Appeals for the Eleventh Circuit

HM FLORIDA-ORL, LLC,
            Plaintiff,

v.                                      Case No:   6:23-cv-950-GAP-LHP

MELANIE GRIFFIN,

            Defendant.

_____

**U.S.C.A. Case No.:**

•     Honorable Gregory A. Presnell, United States District Judge appealed from.

•     Appeal filing fee was paid.

•     Certified copy of Notice of Appeal, docket entries, judgment and/or Order appealed from.  Opinion was
      not entered orally.

                              ELIZABETH M. WARREN, CLERK

                              By:      s/jlk, Deputy Clerk

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

---

HM FLORIDA-ORL, LLC,

     Plaintiff,

        v.

MELANIE GRIFFIN, in her official capacity
as Secretary of the Department of Business
and Professional Regulation, State of Florida,

     Defendant.

Case No. 6:23-cv-00950

---

**NOTICE OF APPEAL**

Notice is hereby given that the Defendant Melanie Griffin appeals to the United States Court of Appeals for the Eleventh Circuit the amended order granting Plaintiffs Motion for Preliminary Injunction and denying Defendants' Motion to Dismiss, ECF No. 30.

Respectfully submitted,

June 27, 2023

ASHLEY MOODY
ATTORNEY GENERAL

Henry C. Whitaker (FBN 1031175)
SOLICITOR GENERAL

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 410-2672 (fax)
Nathan.Forrester@myfloridalegal.com

Jeffrey Paul DeSousa (FBN 110951)
CHIEF DEPUTY SOLICITOR GENERAL

*/s/ Nathan A. Forrester*
\* Nathan A. Forrester (FBN 1045107)
SENIOR DEPUTY SOLICITOR GENERAL

*Counsel for Defendants*

*\* Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of June, 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

/s/ Nathan A. Forrester
Nathan A. Forrester

APPEAL

# U.S. District Court
# Middle District of Florida (Orlando)
# CIVIL DOCKET FOR CASE #: 6:23-cv-00950-GAP-LHP


HM Florida-ORL, LLC v. DeSantis et al

Assigned to: Judge Gregory A. Presnell

Referred to: Magistrate Judge Leslie Hoffman Price

Cause: 28:1331 Fed. Question: Civil Rights Violation

Date Filed: 05/22/2023

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**HM Florida-ORL, LLC**                          represented by   **Brice Moffatt Timmons**
                                                                  Donati Law, PLLC
                                                                  1545 Union Ave.
                                                                  Memphis, TN 38104
                                                                  901-278-1004
                                                                  Fax: 901-278-3111
                                                                  Email: brice@donatilaw.com
                                                                  *LEAD ATTORNEY*
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Melissa J. Stewart**
                                                                  Donati Law, PLLC
                                                                  1545 Union Ave.
                                                                  Memphis, TN 38104
                                                                  901-278-1004
                                                                  Fax: 901-278-3111
                                                                  Email: melissa@donatilaw.com
                                                                  *PRO HAC VICE*
                                                                  *ATTORNEY TO BE NOTICED*

                                                                  **Gary Steven Israel**
                                                                  Gary S. Israel, PA
                                                                  Suite 1500
                                                                  121 S Orange Ave
                                                                  Orlando, FL 32801
                                                                  407-230-6597
                                                                  Email: attorneyisrael@hotmail.com
                                                                  *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Ron DeSantis**                                 represented by   **Nathan Andrew Forrester**
*in his official and individual capacity as*                      1998 Larette Drive
                                                                  Unit A

*Governor of Florida*
*TERMINATED: 06/06/2023*

Tallahassee, FL 32301
703-906-0298
Email:
Nathan.Forrester@myfloridalegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Melanie Griffin**
*in her official capacity as Secretary of the*
*State Department of Business and*
*Professional Regulation for the State of*
*Florida*

represented by **Nathan Andrew Forrester**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William H. Stafford**
Office of the Attorney General
PL-01 - The Capitol
400 S Monroe St
Tallahassee, FL 32399-1050
850-414-3785
Email:
william.stafford@myfloridalegal.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**State of Florida**
*TERMINATED: 06/06/2023*

represented by **Nathan Andrew Forrester**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/27/2023 | 31 | NOTICE OF APPEAL as to 30 Order by Melanie Griffin. Filing fee $ 505, receipt number AFLMDC-20986368. (Forrester, Nathan) (Entered: 06/27/2023) |
| 06/24/2023 | 30 | **AMENDED ORDER granting Plaintiff's 6 Motion for Preliminary Injunction and denying Defendant's 21 Motion to Dismiss. Signed by Judge Gregory A. Presnell on 6/24/2023. (BTM)** (Entered: 06/24/2023) |
| 06/23/2023 | 29 | **ORDER granting Plaintiff's 6 Motion for Preliminary Injunction and denying Defendant's 21 Motion to Dismiss. Signed by Judge Gregory A. Presnell on 6/23/2023. (BTM)** (Entered: 06/23/2023) |
| 06/15/2023 | 28 | RESPONSE re 21 Response in Opposition to Motion, *Plaintiff's Response to Defendants' Motion to Dismiss and Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Temporary Injunction* filed by HM Florida-ORL, LLC. (Timmons, Brice) (Entered: 06/15/2023) |
| 06/15/2023 | 27 | NOTICE of Appearance by William H. Stafford on behalf of Melanie Griffin (Stafford, William) (Entered: 06/15/2023) |
| 06/06/2023 | 26 | **ORDER dismissing Defendants Ron Desantis and the State of Florida as defendants in this action. Clerk is directed to terminate them as defendants. Signed by Judge Gregory A. Presnell on 6/6/2023. (AKC)** (Entered: 06/06/2023) |

| 06/06/2023 | 25 | Minute Entry. In Person Proceedings held before Judge Gregory A. Presnell: MOTION HEARING held on 6/6/2023 re 6 MOTION for Temporary Restraining Order filed by HM Florida-ORL, LLC. Court Reporter: Koretta Stanford (AKC) (Entered: 06/06/2023) |
|---|---|---|
| 06/05/2023 | 24 | NOTICE of supplemental authority *Plaintiff's Notice of Filing Supplemental Authority* by HM Florida-ORL, LLC. (Attachments: # 1 Exhibit A - Findings of Fact and Conclusions of Law entered by Judge Thomas L. Parker WDTN)(Timmons, Brice) Modified on 6/6/2023 to edit docket text (BCB). (Entered: 06/05/2023) |
| 06/05/2023 | 23 | **ORDER directing Plaintiff to respond Defendants Motion to Dismiss and Reply to Defendants 21 Response in Opposition to Motion, filed by Ron DeSantis, Melanie Griffin, State of Florida by 6/15/2023. Signed by Judge Gregory A. Presnell on 6/5/2023. (AKC)** (Entered: 06/05/2023) |
| 06/02/2023 | 22 | CORPORATE Disclosure Statement by Ron DeSantis, Melanie Griffin, State of Florida. (Forrester, Nathan) (Entered: 06/02/2023) |
| 06/02/2023 | 21 | RESPONSE in Opposition re 6 MOTION for Temporary Restraining Order filed by Ron DeSantis, Melanie Griffin, State of Florida. (Attachments: # 1 Exhibit Protection of Children Act, # 2 Exhibit Declaration of Daniel Brackett, # 3 Exhibit Administrative Complaint R House, # 4 Exhibit Administrative Complaint Miami Hyatt, # 5 Exhibit Administrative Complaint Orlando Philharmonic)(Forrester, Nathan) (Entered: 06/02/2023) |
| 06/01/2023 | 20 | **ENDORSED ORDER granting 16 Motion to Appear Telephonically provided that Plaintiff will be represented in person at the hearing by lead counsel. Counsel may appear telephonically by calling 1-888-251-2909,a few minutes prior and wait for the host to start the call. The court will email to counsel the access code and password by separate email. Signed by Judge Gregory A. Presnell on 6/1/2023. (AKC)** Modified on 6/1/2023 (AKC). (Entered: 06/01/2023) |
| 05/31/2023 | 19 | RETURN of service executed on May 25, 2023 by HM Florida-ORL, LLC as to State of Florida. (Israel, Gary) (Entered: 05/31/2023) |
| 05/31/2023 | 18 | RETURN of service executed on May 25, 2023 by HM Florida-ORL, LLC as to Melanie Griffin. (Israel, Gary) (Entered: 05/31/2023) |
| 05/31/2023 | 17 | RETURN of service executed on May 25, 2023 by HM Florida-ORL, LLC as to Ron DeSantis. (Israel, Gary) (Entered: 05/31/2023) |
| 05/31/2023 | 16 | First MOTION for GARY S. ISRAEL to appear telephonically *to appear virtually for June 6, 2023 Hearing* by HM Florida-ORL, LLC. (Israel, Gary) Motions referred to Magistrate Judge Leslie Hoffman Price. (Entered: 05/31/2023) |
| 05/26/2023 | 15 | NOTICE of Lead Counsel Designation by Brice Moffatt Timmons on behalf of HM Florida-ORL, LLC. Lead Counsel: Brice M. Timmons. (Timmons, Brice) (Entered: 05/26/2023) |
| 05/26/2023 | 14 | NOTICE of Lead Counsel Designation by Gary Steven Israel on behalf of HM Florida-ORL, LLC. Lead Counsel: Brice Timmons. (Israel, Gary) (Entered: 05/26/2023) |
| 05/26/2023 | 13 | **ORDER granting 10 Motion to Appear Pro Hac Vice; granting 11 Motion to Appear Pro Hac Vice. Signed by Magistrate Judge Leslie Hoffman Price on 5/26/2023. (MKH)** (Entered: 05/26/2023) |
| 05/25/2023 | 12 | NOTICE TO COUNSEL Gary Steven Israel, Brice M. Timmons, Melissa J. Stewart of Local Rule 2.02(a), which states, "The first paper filed on behalf of a party must designate only one lead counsel who - unless the party changes the designation - remains lead counsel throughout the action." Counsel must file a **Notice of Lead** |

| | | |
|---|---|---|
| | | **Counsel Designation** identifying lead counsel. (Signed by Deputy Clerk). (BCB) (Entered: 05/25/2023) |
| 05/25/2023 | 11 | First MOTION for Melissa J. Stewart to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-20876662 for $150 by HM Florida-ORL, LLC. (Israel, Gary) Motions referred to Magistrate Judge Leslie Hoffman Price. (Entered: 05/25/2023) |
| 05/25/2023 | 10 | First MOTION for Brice M. Timmons to appear pro hac vice, Special Admission fee paid, Receipt No. AFLMDC-20876633 for $150 by HM Florida-ORL, LLC. (Israel, Gary) Motions referred to Magistrate Judge Leslie Hoffman Price. (Entered: 05/25/2023) |
| 05/24/2023 | 9 | SUMMONS issued as to Ron DeSantis, Melanie Griffin, State of Florida. (BCB) (Entered: 05/24/2023) |
| 05/24/2023 | 8 | CORPORATE Disclosure Statement by HM Florida-ORL, LLC. (Israel, Gary) Modified on 5/24/2023 to edit docket text (BCB). (Entered: 05/24/2023) |
| 05/23/2023 | 7 | **ORDER Setting Hearing on Motion 6 MOTION for Temporary Restraining Order : Motion Hearing set for 6/6/2023 at 01:30 PM in Orlando Courtroom 5 A before Judge Gregory A. Presnell. Defendants shall file their written response to the motion by 6/2/23. Signed by Judge Gregory A. Presnell on 5/23/2023. (AKC)** (AKC). (Entered: 05/23/2023) |
| 05/23/2023 | 6 | MOTION for Temporary Restraining Order and Preliminary Injunction with Incorporated Memorandum of Law by HM Florida-ORL, LLC. (filed initially on 5/22/23)(AKC) Modified on 5/24/2023 to edit docket text (BCB). (Entered: 05/23/2023) |
| 05/23/2023 | 5 | CERTIFICATE of interested persons and corporate disclosure statement by HM Florida-ORL, LLC. (Israel, Gary) Modified on 5/24/2023 to edit docket text (BCB). (Entered: 05/23/2023) |
| 05/23/2023 | 4 | NOTICE of a related action per Local Rule 1.07(c) by HM Florida-ORL, LLC. Related case(s): No. Modified on 5/24/2023 to edit docket text (BCB). (Entered: 05/23/2023) |
| 05/23/2023 | 3 | **INITIAL CASE ORDER. Certificate of interested persons and corporate disclosure statement and Notice of Pendency of Other Actions due within 14 days. Signed by Judge Gregory A. Presnell on 5/23/2023. (AKC)** (Entered: 05/23/2023) |
| 05/23/2023 | 2 | NEW CASE ASSIGNED to Judge Gregory A. Presnell and Magistrate Judge Leslie Hoffman Price. New case number: 6:23-cv-950-GAP-LHP. (ARC) (Entered: 05/23/2023) |
| 05/22/2023 | 1 | COMPLAINT *Verified Complaint for Injunctive Relief* (Filing fee $402 receipt number AFLMDC-20862457) filed by HM Florida-ORL, LLC. (Attachments: # 1 Supplement Motion for Temporary Restraining Order and Preliminary Injunction with Incorporated Memorandum of Law, # 2 Civil Cover Sheet, # 3 Proposed Summons, # 4 Proposed Summons, # 5 Proposed Summons)(Israel, Gary) Modified on 5/24/2023 to edit docket text (BCB). Modified on 5/24/2023 to edit docket text (BCB). (Entered: 05/22/2023) |

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

HM FLORIDA-ORL, LLC,

        Plaintiff,

v.                                Case No:   6:23-cv-950-GAP-LHP

MELANIE GRIFFIN,

        Defendant

_____

## ORDER[1]

     This case addresses the constitutionality of Florida Statute § 827.11. The state claims that this statute seeks to protect children generally from obscene live performances. However, as explained *infra*, Florida already has statutes that provide such protection. Rather, this statute is specifically designed to suppress the speech of drag queen performers. In the words of the bill's sponsor in the House, State Representative Randy Fine: "…HB 1423…will protect our children by ending the gateway propaganda to this evil — 'Drag Queen Story Time.' "[2]

_____

    [1]  The Court has filed this Amended Order to include discussion in Sec. III.B.1.b. inadvertently omitted from the original filing.

    [2]  *See* State Representative Randy Fine, FACEBOOK (April 12, 2023), https://www.facebook.com/voterandyfine/posts/761831661970637?ref=embed_post.

This cause came before the Court for consideration on Plaintiff's Supplemental Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6).[3] Defendant responded in opposition to the motion and simultaneously moved to dismiss (Doc. 21) Plaintiff's action. The Court conducted a non-evidentiary hearing on June 6, 2023, and subsequently considered Plaintiff's Response (Doc. 28) to Defendant's Motion to Dismiss.

## I.    Background

### A. House Bill 1423/Senate Bill 1438

On May 17, 2023, Florida Governor Ron DeSantis signed Senate Bill 1438 (the "Act") into law.[4] *See* 2023 Fla. Laws ch. 2023-94. Along with amending three existing laws,[5] the Act created a new statute—Fla. Stat. § 827.11—which prohibits any person from knowingly admitting a child to an "adult live performance." *Id.* §§ 1-4. Violation of the statute authorizes the Florida Department of Business and Professional Regulation ("DBPR") to impose fines and revoke or suspend the operating and/or liquor license of any public lodging, food service establishment,

---

[3] Because notice was not impractical in this matter, the Court treats Plaintiff's Motion as one for Preliminary Injunction under Local Rule 6.02. *See* Doc. 7.

[4] The Act took effect upon being signed into law. 2023 Fla. Laws ch. 2023-94, § 5. Its companion bill in the House was HB 1423. THE FLORIDA SENATE, 2023 Session Bills, *SB 1438* (June 22, 2023), https://www.flsenate.gov/Session/Bill/2023/1438.

[5] *See* Fla. Stat. §§ 255.70(1)-(3), 509.26(10), and 561.29(1).

or other licensee.[6] Fla. Stat. §§ 509.261(10), 561.29(1). In addition, any person who violates § 827.11 may be prosecuted and subject to punishment as a misdemeanor of the first degree. *See* Fla. Stat. § 827.11(3)-(4); *see also id.* § 775.082(4)(a) & § 775.083(1)(d).

The statute defines an "adult live performance" as:

[A]ny show, exhibition, or other presentation in front of a live audience which, in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, or specific sexual activities as those terms are defined in s. 827.001, *lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts when it*:

1. Predominantly appeals to a prurient, shameful, or morbid interest;

2. Is patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present; and

3. Taken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present.

*Id.* § 827.11(1)(a) (emphasis added). It prohibits any defense based on "a person's ignorance of a child's age, a child's misrepresentation of his or her age, or a bona

---

[6] Fla. Stat. § 509.261 was amended to add subsection (10), authorizing the state to "fine, suspend, or revoke the license" of lodging and food services establishments that admit a child to an adult live performance. *Id.* § 509.261(10)(a). In addition to the ability to suspend or revoke a license, it provides that the state may issue a $5,000 fine for a first violation and a $10,000 fine for second or subsequent violations. *Id.* § 509.261(10)(c)-(d).

Fla. Stat. § 561.29 was amended to apply the same scheme to liquor licenses. *Id.* § 561.29(1).

fide belief of a child's consent." *Id.* § 827.11(2). The term "child" is not specifically defined by the new statute.[7] Neither are the terms "live performance," "lewd conduct,"[8] or "lewd exposure of prosthetic or imitation genitals or breasts" defined.

### B. Posture

Plaintiff HM Florida-ORL, LLC ("Plaintiff"), is a Florida for-profit business operating Hamburger Mary's Restaurant and Bar in Orlando. Doc. 1, ¶ 4. Plaintiff frequently presents drag show performances, comedy sketches, and dancing, including "family friendly" drag performances on Sundays where children are invited to attend. *Id.* ¶¶ 4, 12. Plaintiff brought suit under 42 U.S.C. § 1983 on May 22, 2023, alleging that the Act "seeks to explicitly restrict, or chill speech and expression protected by the First Amendment based on its content, its message, and its messenger." Doc. 1, ¶ 50. Since the passage of the Act, Plaintiff has been forced

---

[7] Chapter 827 of the Florida Statutes pertains generally to the "abuse of children." Section 827.01 defines a "child" as "any person under the age of 18 years." Fla. Stat. § 827.01.

[8] The Court consulted Fla. Stat. § 800.04—which covers "lewd or lascivious offenses"—to obtain guidance on the meaning of "lewd conduct." Alas, such offenses are defined only by their own terms. *See, e.g.,* § 800.04(6) ("A person who…[i]ntentionally touches a person 16 years of age *in a lewd or lascivious manner*; or…[s]olicits a person under 16 years of age to commit a *lewd or lascivious act* …commits *lewd or lascivious conduct*."). The Florida Supreme Court's jury instructions offer an inkling into covered conduct, but likewise leave the reader with more questions than answers. *See* THE FLORIDA BAR, Criminal Jury Instructions Chapter 11, § 11.10(d) (accessed June 16, 2023), available at https://www.floridabar.org/rules/florida-standard-jury-instructions/criminal-jury-instructions-home/criminal-jury-instructions/sji-criminal-chapter-11/[hereinafter "Jury Instructions"]. According to these Instructions, "[t]he words 'lewd' and 'lascivious' mean the same thing: a wicked, lustful, unchaste, licentious, or sensual intent on the part of the person doing an act." *Id.*

- 4 -

to cancel its family drag shows, alleging that "[t]hey cannot take place if the law is allowed to stand." *Id.* ¶¶ 43, 49; *see also id.* ¶¶ 23-25, 37-39.

In support of its allegations, Plaintiff claims that the statute is not sufficiently narrowly tailored to achieve a compelling government interest and that it is unconstitutionally vague and overbroad. *Id.* ¶¶ 30-45. Plaintiff points to the ambiguity of terms like "lewd conduct" and "child," and the broad subjectivity that must necessarily be employed to enforce such language. *Id.* ¶ 30.c.3-4. What may be obscene for a child of four may not be obscene for a seventeen-year-old, *id.* ¶ 30.c.4, but Plaintiff alleges it cannot risk its business licenses or an arrest trying to guess how regulators will enforce the statute. *Id.* ¶ 43.

In justification of its self-censorship, Plaintiff also cites to recent efforts by Defendant Secretary of DBPR Melanie Griffin ("Defendant") to revoke the liquor license of Orlando's Plaza Live (the "Plaza Live") venue after it hosted an "A Drag Queen Christmas" show.[9] *Id.* ¶¶ 23-25. On December 28, 2022—the day of the show—Defendant sent the Plaza Live a letter stating that she "ha[d] reason to believe that th[e] drag show is of a sexual nature involving…the sexualization of

_____

[9] *See* Amanda Rabines, *Florida moves to revoke Orlando event venue's liquor license after drag queen show*, TAMPA BAY TIMES (February 5, 2023), https://www.tampabay.com/news/florida-politics/2023/02/05/florida-moves-revoke-orlando-event-venues-liquor-license-after-drag-queen-show/; *see also* Doc. 21-5 (*Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco v. The Orlando Philharmonic Plaza Foundation Inc.,* Case No. 2022-061146 (filed Feb. 3, 2023)).

children's stories." Doc. 21-5 at 14. Defendant clearly stated that, "if you allow children to attend the…drag show at your facility, you are putting your license in jeopardy." *Id.* However, despite the fact that undercover state agents reportedly observed "no lewd acts such as exposure of genital organs,"[10] Defendant has continued to prosecute its administrative complaint under existing lewd and lascivious exhibition and other obscenity and nuisance statutes. *See* Doc. 21-5; *see also Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco v. The Orlando Philharmonic Plaza Foundation Inc.,* Case No. 2022-061146 (filed Feb. 3, 2023).

Plaintiff alleges that the Act was passed to stop children from attending drag shows by authorizing Defendant to suspend or revoke the licenses of businesses like theirs. Doc. 6, ¶¶ 25-27. Consequently, Plaintiff seeks a preliminary injunction to enjoin any further enforcement of the Act until a trial is held on its constitutionality. *See id.* at 26. Defendant counters that Plaintiff's motion should be denied and its Complaint should be dismissed because the statute is constitutional and furthers the compelling state interest of protecting children from exposure to "age-inappropriate, sexually explicit live performances." Doc. 21 at 3.

---

[10] *See* Nicholas Nehamas & Ana Ceballos, *Florida undercover agents reported no 'lewd acts' at drag show targeted by DeSantis,* TAMPA BAY TIMES (March 20, 2023), https://www.tampabay.com/news/florida-politics/2023/03/20/desantis-drag-show-lewd-liquor-license-complaint-lgbtq/.

## II.    Legal Standards

### A. Motion to Dismiss

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the plaintiff, *see, e.g., Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

### B. *Preliminary Injunction*

District courts are empowered to grant a preliminary injunction "only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270–71 (11th Cir. 2020) (citations omitted). The third and fourth factors "merge when the [g]overnment is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

### III.   Analysis

### A. *Defendant's Motion to Dismiss*

In her Motion to Dismiss Plaintiff's Complaint, Defendant makes three principal arguments: (1) the Complaint should be dismissed as a "shotgun pleading"; (2) Plaintiff lacks Article III standing to bring this case; and (3) the State of Florida and Governor Ron DeSantis are protected from this suit by sovereign immunity and should be dismissed. *See* Doc. 21, 15-22. At the June 6, 2023, hearing,

however, the parties stipulated to the dismissal of Defendants Governor Ron DeSantis and the State of Florida, rendering Defendant's sovereign immunity arguments moot.[11] *See* Doc. 26. Consequently, the Court only addresses Defendant's shotgun pleading and standing arguments.

## 1. Shotgun Pleading

Complaints filed in violation of Rule 8(a)(2) or Rule (10)(b) of the Federal Rules of Civil Procedure are disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four principal varieties of shotgun pleadings, unified by their failure "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. One such variety of shotgun pleading "commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* Defendant argues that Plaintiff's Complaint "consists of a single Count 1 with a mish-mash of different, vaguely articulated constitutional theories presented in non-consecutively numbered paragraphs." Doc. 21 at 16. They further complain that "[s]ome paragraphs are not numbered at

---

[11] Likewise, there is no residual dispute that Defendant Melanie Griffin is a proper party. *See* Docs. 25-26.

all; some employing numbering systems that do not match the ones preceding it." *Id.*

Plaintiff's Complaint does not constitute a shotgun pleading. The Complaint, in Count I, clearly uses an outline format with subsections of descending alphanumeric delineation (*i.e.*, I, A, 1, a., i., etc.), as is ubiquitous in the legal profession. *See* Doc. 1 at 10-14. True, two paragraphs are not numbered at all; however, a cursory glance reveals those paragraphs to be quotations following a colon. *Id.* at 10-11. While Plaintiff's Complaint may leave room for improvement, its logical outline structure in no way equates to a "mish-mash" that leaves Defendant to "speculate as to which claims [she] should be defending against." *See* Doc. 21 at 16; *see also Weiland*, 792 F.3d at n. 12. Plaintiff plainly asserts one count under 42 U.S.C. § 1983—with several constitutional theories to support it—which requires no further demarcation. *See Weiland*, 792 F.3d at 1323.

## 2. Standing

To establish standing to bring its constitutional challenge, Plaintiff must show that: "(1) [it] has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the operation of the [Act]; and (3) a favorable judgment is likely to redress the injury." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010) (citing *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003)). The injury-in-fact requirement is applied "most loosely where First Amendment rights are involved,

lest free speech be chilled even before the law or regulation is enforced." *Id.* at 1254. Indeed, "it is well-established that an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Id.* (quoting *Pittman v. Cole*, 267 F.3d 1269, 1283 (11th Cir. 2001) (internal quotation marks omitted)).

First, Plaintiff alleges that the Act is written so broadly as to have a "chilling effect on the First Amendment rights of the citizens of Florida." Doc. 6, ¶ 51. Based upon the vagueness of the Act, Plaintiff asserts that "it has a reasonable fear of prosecution for conducting shows similar to those it has performed in the past, which may be punishable by the statute with criminal effect." *Id.* ¶ 54.a. Plaintiff alleges its family drag shows—despite not being obscene—could be construed to fall within the Act's purview of proscribed conduct as it is presently written. *See id.*; *see also supra* at note 8. Plaintiff argues that it "should not be required to eat the proverbial mushroom to find out whether it is poisonous." Doc. 6, ¶ 54.a. Longstanding precedent supports this contention. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("Where the alleged danger of legislation is one of self-censorship, harm can be realized even without an actual prosecution."). After all, "it is the existence, not the imposition, of standardless requirements that causes [the] injury." *CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1275 (11th Cir. 2006).

In addition, Plaintiff has alleged it is already suffering significant injury-in-fact from its self-censorship. Doc. 1, ¶ 43. Upon passage of the bill, Plaintiff advised its customers that children would no longer be permitted to attend its drag shows. *Id.* This resulted in the immediate cancellation of "20% of their bookings…for the May 21, 2023, show and for future bookings." *Id.* Defendant contends that Plaintiff's intended conduct does not amount to conduct "arguably proscribed" by the Act, Doc. 21 at 18 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014)), dubiously proclaiming that if Plaintiff's performances are what they say they are, then they should have no fear of prosecution. *Id.* at 23.

However, as Plaintiff responds, because it cannot know what is encompassed by the terms "lewd conduct" or "lewd exhibition of prosthetic genitals or breasts," it cannot know with any confidence whether its shows will expose it to liability under the Act. *See* Doc. 28 at 4; *see also* Fla. Stat. § 827.11(1)(a). Plaintiff, informed by the vague statutory language and Defendant's enforcement activity against the Plaza Live, has been forced to chill its regular practice of opening many of its performances to all ages—at an economic loss. Doc. 28 at 4. Plaintiff has sufficiently "alleged an intention to engage in a course of conduct arguably affected with a

constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution[.]" *Driehaus*, 573 U.S. at 160.[12]

Defendant argues that this case is more like *Younger v. Harris*, 401 U.S. 37 (1971), because the administrative actions it has taken against the Plaza Live (and others) involved distinct, *obscene* drag shows and those entities are not being prosecuted under the Act. Doc. 21 at 19-20. However, Plaintiff does not challenge the constitutionality of the statutes that those entities are being prosecuted under. *See generally* Doc. 1. Instead, it merely highlights those cases as indicative of Defendant's appetite for finding obscenity in drag performances, even where undercover state agents have reportedly concluded none exists. *See* Doc. 6, ¶ 55. Coupled with statements by lawmakers, including a statement made by one of the Act's sponsors that the Act was designed to target drag shows,[13] Plaintiff's fear of

---

[12] Defendant is authorized by the Florida Statutes to enforce the Act's amended language in §§ 509.261 and 561.29, which is governed by the creation of § 827.11. *See generally* Doc. 21 at I.D; *see also infra* at note 11. "If a challenged law or rule was recently enacted…an intent to enforce the rule may be inferred." *Harrell*, 608 F.3d at 1257 (citing *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821 (5th Cir.1979) (explaining that a court can "assume that law enforcement agencies will not disregard…a recent expression of the legislature's will")).

[13] *See supra* at note 2. Additionally, on the day of a legislative subcommittee hearing on the bill, Representative Randy Fine—who sponsored the legislation—posted on Facebook that the Act would "ban the City of Melbourne from 'welcoming' drag queen adult entertainers from grooming our children! Promises made, promises kept!" State Representative Randy Fine, FACEBOOK (April 12, 2023), https://www.facebook.com/voterandyfine/posts/782903609863442.

prosecution based on the Act's alleged vague construction is not unfounded. At worst, Plaintiff certainly claims that "a prosecution is remotely possible" if it does not self-censor. *Younger*, 401 U.S. at 42.

Finally, it is clear that Plaintiff's injury is fairly traceable to the operation of the Act and would be redressed by a favorable judgment against the Defendant. *See Harrell*, 608 F.3d at 1253. Plaintiff has sufficiently alleged in its Complaint that the Act—particularly its use of the terms "live performance," "child," "lewd conduct," and "lewd exposure of prosthetic or imitation genitals or breasts"—at least arguably creates a substantial risk to its licenses due to its vague and overbroad language. Doc. 6, ¶¶ 46-49. Plaintiff's actions of self-censorship represent a reasonable attempt to "steer wide of any possible violation lest [it] be unwittingly ensnared." *Harrell*, 608 F.3d at 1255 (quoting *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 820 (5th Cir.1979)).[14] And, "[a]s for the redressability prong, if the challenged rules are stricken as unconstitutional, [Plaintiff] simply need not contend with them any longer." *Harrell*, 608 F.3d at 1257. Therefore, Plaintiff has Article III standing to pursue its claim. *See Harrell*, 608 F.3d at 1253.

Accordingly, Defendant's Motion to Dismiss will be **DENIED**.

---

[14] The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered before the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

### B.  *Plaintiff's Motion for Preliminary Injunction*

Having determined that Plaintiff has standing to bring its claim and that the Complaint is properly pled, the Court now analyzes Plaintiff's Motion for Preliminary Injunction as applied to the remaining Defendant.

### 1.  Substantial Likelihood of Success on the Merits

#### a.  *First Amendment Grounds*

##### i.   The Act is a Facially Content-Based Regulation

"A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin, Tex. v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Applied here, the Act criminalizes allowing children to attend performances based on the communicative content of "adult live performances." Only content that "depicts or simulates nudity, sexual content, sexual excitement…lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts when it…offends the prevailing standards in the adult community…with respect to what is suitable material…for the age of [a] child present" is prohibited by the Act. Fla. Stat. § 827.11(a).

The absence of any argument to the contrary by Defendant bolsters the conclusion that this is plainly a facially content-based regulation. *See City of Austin,*

142 S. Ct. at 1471. Like in *United States v. Playboy*, the "overriding justification for the regulation is concern for the effect of the *subject matter* on young viewers." 529 U.S. 803, 811 (2000) (emphasis added). The Act "focuses only on the content of the speech and the direct impact that speech has on its [viewers]." *Id.* at 811-12 (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)). It does not restrict the attendance of children from all live performances, only those engaged in the portrayal of a specific, enumerated subset of content. *See* Fla. Stat. § 827.11(1)(a). Because the Act is content-based on its face, there is "no need to consider the government's justifications or purposes for enacting the [Act] to determine whether it is subject to strict scrutiny." *See Reed*, 576 U.S. at 164-65.

### ii.     The Act Does Not Survive Strict Scrutiny

Because the Act is facially content-based, it is subject to strict scrutiny, and the government must use the least restrictive means available to achieve a compelling purpose. *Reed*, 576 U.S. at 163 (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.")). Obscenity has long been recognized as a limited category of unprotected speech. *See Miller v. California*, 413 U.S. 15, 23 (1973). Plaintiff likewise concedes that "there is a compelling interest in protecting the physical and

psychological well-being of minors." Doc. 1, ¶ 30.b. (quoting *Sable Comms. of Cal., Inc. v. FCC*, 482 U.S. 115, 126 (1989)). However, Plaintiff argues that the Act is not "narrowly tailored." *Id.* ¶ 30.c.; *see also R.A.V.*, 505 U.S. at 395.

In their Response, Defendants argue that the Act's language and restrictions track those upheld in *Ginsberg v. New York*, 390 U.S. 629, 639 (1968). There are several significant distinctions, however, between the narrowly tailored statute in *Ginsberg* and Fla. Stat. § 827.11. First, the Supreme Court in *Ginsberg* "relied not only on the State's independent interest in the well-being of its youth, but also on the consistent recognition of the principle that 'the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society.' " *Reno v. ACLU*, 521 U.S. 844, 865 (1997). The prohibition against the sale to minors of material considered obscene for their age in the statute at issue in *Ginsberg* "d[id] not bar parents who so desire[d] from purchasing magazines for their children." *Id.* The Act does not allow for the exercise of parental discretion, stating plainly that "[a] person may not knowingly admit a child to an adult live performance," explicitly foreclosing any defense based on a "bona fide belief of a child's consent."[15] Fla. Stat. §§ 827.11(2)-(3).

---

[15] The Court assumes this language refers to *parental* consent, as it is unclear how, for instance, a sixteen-year-old could "legally" consent to viewing a show they are criminally prohibited from seeing until the age of eighteen.

Second, the statute in *Ginsberg* only applied to commercial transactions, as opposed to the apparent universal application of § 827.11 to anyone, anywhere—the statute does not define a "live performance," which could conceivably range from a sold-out burlesque show to a skit at a backyard family barbecue. *See id.*; *Reno*, 521 U.S. at 865. Third, and arguably most importantly, the Act here does not define several important terms: "live performance;" "child;"[16] "lewd conduct;" and "lewd exposure of prosthetic or imitation genitals or breasts." *See Reno*, 521 U.S. at 865 (distinguishing *Ginsberg* from a statute which included, without definition, the term "indecent"). These ambiguities, especially those pertaining to "lewd" conduct and exposure of prosthetics, represent a material departure from the established obscenity outline set forth in *Miller*. 43 U.S. at 24; *see also, e.g., Am. Booksellers v. Webb*, 919 F.2d 1493, 1496, 1513 (11th Cir. 1990).

Similarly indicative of the Florida Legislature's failure to narrowly tailor § 827.11 is its inevitable clash with the Florida "Parents' Bill of Rights" and other laws. *See* Fla. Stat. § 1014 (2023). In pertinent part, Fla. Stat. § 1014 states that: "All parental rights are reserved to the parent of a minor child in this

---

[16] In *Ginsberg*, the statute at issue defined a minor as a person under seventeen, whereas here the Act presumably applies to all persons under eighteen. *Reno*, 521 U.S. at 865-66. Defendant argues that the flexibility inherent in § 827.11's reference to "suitable material or conduct *for the age of the child present*" allays concerns voiced by the Third Circuit in *ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003). Doc. 21 at 11 (emphasis added). On the contrary, this merely introduces an even more impossible standard for businesses and individuals to comprehend.

state…including…[t]he right to direct the upbringing and the moral or religious training of his or her minor child." *Id.* § 1014.04(1)(b). This comports with other laws in Florida, such as § 847.013, which governs the exposure of minors to "harmful motion pictures, *exhibitions, shows, presentations*, or representations." *Id.* (emphasis added). That law prohibits the kind of obscene material described in *Miller* and, indeed, the Act here, with the exception that it does not incorporate ambiguities like "lewd conduct" or "lewd exposure of prosthetic or imitation genitals or breasts." *Id.* § 847.013(3). Importantly, however, that law *does* include a limiting provision which allows for a minor accompanied by his or her parents to attend any such exhibitions, regardless of the minor's age. *Id.* § 847.013(3)(c).

Like the statute in *Reno*, "the many ambiguities concerning the scope of [§ 827.11's] coverage render it problematic for purposes of the First Amendment." 521 U.S. at 870. Unlike comparable statutes which target commercial activity and are more narrowly tailored in their scope to allow for parental discretion, specific age thresholds, and clearly defined terms, § 827.11 proscribes conduct universally and threatens to permit "a standardless sweep [which would] allow[] policemen, prosecutors, and juries to pursue their personal predilections." *Smith v. Goguen*, 415 U.S. 566, 575 (1974). Including an exception for parental consent, as it did in § 847.013, is at least one less restrictive means through which the Legislature could have sought to further the state's compelling interest in protecting minors from

obscene performances. Following the logic of *Ginsberg* and *Reno*, where such a fundamental consideration is found lacking, § 827.11 is not sufficiently narrowly tailored to survive strict scrutiny. *See Reed*, 576 U.S. at 163; *Playboy*, 529 U.S. at 813. Plaintiff is therefore likely to succeed on its First Amendment claims.

b. *Vagueness and Overbreadth*

Plaintiff's Complaint also alleges that § 827.11 is unconstitutionally vague and overbroad. Doc. 1, ¶¶ 37-41. The "void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Courts must primarily focus on "the requirement that legislatures establish minimal guidelines to govern law enforcement." *Id.* at 358. Additionally, "[t]he showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep'… suffices to invalidate all enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.' " *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)).

As alluded to above, there are several aspects of § 827.11 that raise vagueness concerns. *See infra* at 16-17. Most relevant is the inclusion of "lewd conduct" and

"lewd exposure of prosthetic or imitation genitals or breasts." Fla. Stat. § 827.11(1)(a). Not only does the statute fail to define these terms, but one must resort to state jury instructions to find *any* articulated definition of "lewd conduct." *See* Jury Instructions, *supra* at note 8. Once discovered, this definition serves only to further broaden the scope of what may be covered by using terms like "wicked," "lustful," and "unchaste"—all vulnerable to broad subjectivity which ultimately leaves an individual of common intelligence to "necessarily guess at [their] meaning." *See id.*; *Connally v. General Const. Co.*, 269 U.S. 385, 391 (1926).

Defendant limited its retort to this characterization of "lewd conduct" to a footnote in its Response. *See* Doc. 21 at note 3. Seeking support for a definition of "lewd conduct" that is not vague, Defendant cites to two cases. *Id*. In the first, which regarded the importation of obscene articles to the United States, the Supreme Court construed several terms—including "lewd"—in a footnote in anticipation of future challenges to their "vagueness…as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462."[17] *United States v. 12 200-Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973). The Supreme Court indicated that, in the context of those statutes, those terms should be interpreted in line with the "hard core

---

[17] 18 U.S.C. § 1462 governs the importation of obscene articles to the United States and sets criminal penalties. 19 U.S.C. § 1305(a) governs the importation of obscene articles to the United States in the context of customs duties.

sexual conduct given as examples in *Miller*" or any other definitions imparted by Congress. *Id.* (internal quotations omitted). But the terms in that case were interpreted—prospectively—in a markedly distinguishable context from Defendant's (and the public's) task in determining the application of the terms "lewd conduct" or "lewd exposure of prosthetic or imitation genitals or breasts" to describe an "adult live performance" under Fla. Stat. § 827.11. *See id.*

Defendant also cites to *Chesebrough v. State*, where the Florida Supreme Court addressed the vagueness of the terms "lewd" and "lascivious." 255 So. 2d 675, 677 (Fla. 1971). *Chesebrough* undertook a review of these definitions but succeeded only in creating further ambiguity by proclaiming words like "lewd" to be "in common use, and the[ir] definitions indicate with reasonable certainty the character of the acts and conduct" prohibited. *Id.* That calculation was understandably less opaque in a case which held that sexual intercourse exhibited to a fourteen-year-old was sufficient to constitute "a lewd and lascivious act". *Id.* at 679.

However, recognizing definitions of "lewd" to include conduct "connot[ing] wicked, lustful, unchaste, licentious, or sensual design on the part of the perpetrator" in an individual criminal context does not aide Defendant in her administrative determination of whether an "adult live performance" is covered by Fla. Stat. § 827.11. *See id.* at 677 (quoting *Boles v. State*, 158 Fla. 220, 27 So.2d 293 (1946)). Nor does it aid the public in its own efforts to avoid criminal prosecution.

*Chesebrough* chiefly serves to acknowledge the vagueness inherent in words like "lewd" by collecting the wide variety of definitions accorded to them by courts over the years. *Id.* at 677-79. Despite determining that such a morass was sufficient to pass constitutional muster, it primarily held that this particular egregious act sufficiently fell within the bounds of a "lewd and lascivious act." *Id.* at 679. While terms like "lewd and lascivious" may have been in common use fifty years ago, definitions like "an unlawful indulgence in lust, eager for sexual indulgence," do very little to inform a "person of ordinary understanding [today]…what conduct on his part is condemned" under Fla. Stat. § 827.11. *Id.* at 677.

A fully clothed drag queen with cleavage-displaying prosthetic breasts reading an age-appropriate story to children may be adjudged "wicked"—and thus "lewd"—by some,[18] but such a scenario would not constitute the kind of obscene conduct prohibited by the statutes in cases like *Miller*. Moreover, the Act's focus on "prosthetic or imitation genitals or breasts" raises a host of other concerns not simply answered—what are the implications for cancer survivors with prosthetic genitals or breasts? It is this vague language—dangerously susceptible to standardless, overbroad enforcement which could sweep up substantial protected

---

[18]  House Bill Sponsor Randy Fine stated that he introduced the bill to protect children from "Drag Queen Story Time." *See supra* at note 2.

speech—which distinguishes § 827.11 and renders Plaintiff's claim likely to succeed on the merits.

## 2.  Irreparable Injury

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiff has alleged that the vague and overbroad language of the statute affords such wide enforcement discretion to DBPR that "[t]he reader is only made to guess what conduct is prohibited." Doc. 1, ¶ 30.c.9. Consequently, Plaintiff has had to prohibit children from attending their drag shows because "[t]hey simply cannot take the chance that their business or liquor licenses would be suspended for hosting a drag show where children attend." *Id.* ¶ 43. Plaintiff has adequately pled that it is suffering irreparable injury.

## 3.  Harm and Public Interest

Defendant professes that a statewide preliminary injunction would "harm the public by exposing children to 'adult live performances.' " Doc. 21 at 24. This concern rings hollow, however, when accompanied by the knowledge that Florida state law, presently and independently of the instant statutory scheme, permits any minor to attend an R-rated film at a movie theater if accompanied by a parent or guardian. *See* Fla. Stat. § 847.013(3)(c). Such R-Rated films routinely convey content at least as objectionable as that covered by § 827.11.

Plaintiff contends that its fifteen years of incident-free, harmless drag shows demonstrates the absence of any substantial harm to Defendant or to the public interest. *See* Doc. 6, ¶ 57. Moreover, existing obscenity laws provide Defendant with the necessary authority to protect children from any constitutionally unprotected obscene exhibitions or shows. *See*, *e.g.*, § 847.013(3)(a). The harm to Plaintiff clearly outweighs any purported evils not covered by Florida law and a preliminary injunction would not be adverse to the public interest.

## IV.   Conclusion

Accordingly, it is **ORDERED** that Defendant's Motion to Dismiss (Doc. 21) is hereby **DENIED** and Plaintiff's Motion for Preliminary Injunction (Doc. 6) is **GRANTED.**

## V.    Preliminary Injunction

For the reasons stated above, Defendant Melanie Griffin, in her official capacity as Secretary of the Florida Department of Business and Professional Regulation, is hereby **ENJOINED** from instituting, maintaining, or prosecuting any enforcement proceedings under the Act[19] until further order of the Court following a trial on the merits of this case.

---

[19] This injunction shall apply to proceedings instituted, maintained, or prosecuted under the statutes amended and created by SB 1423. *See* Fla. Stats. §§ 255.70(1)-(3), 509.26(10), 561.29(1), and 827.11.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on June 24, 2023.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties