IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| HM FLORIDA-ORL, LLC, | ) |
|     Plaintiff | ) |
| v. | )   Case No. 6:23-cv-00950 |
| THE STATE OF FLORIDA, MELANIE GRIFFIN, in her Official capacity as Secretary of THE STATE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, STATE OF FLORIDA, | ) ) ) ) ) ) ) |
|     Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A PARTIAL STAY PENDING APPEAL OF PRELIMINARY INJUNCTION**

The Plaintiff, HM FLORIDA-ORL, LLC, by and through counsel, files its Response to Defendant's Motion for a Partial Stay Pending Appeal of Preliminary Injunction (ECF 33):

**I.   INTRODUCTION**

Defendant has moved this Court for a partial stay seeking to limit the scope of this Court's injunction against Defendant's enforcement of §§ 255.70(1)-(3), 509.26(10), 561.29(1), and 827.11 ("the Act") against non-parties to this litigation. Defendant's argument is, in essence, that because Plaintiff is proceeding as an individual and not as a class action, that this Court must limit injunctive relief to protect *only* the interests of the Plaintiff and not that of non-parties. This Court

1

should reject the argument that restrictions on the speech of non-parties have no impact on the speech of the litigants themselves. Speech, art, and other expressive conduct are a conversation within our society. An art professor discussing Degas' ballerinas and their relationship to evolving views on the sexualization of children is in conversation with artists, academics, and the world at large, as well as the past, present, and future. But such conversations need not be so high-minded to be of public value and to have intrinsic relationships to each other.

Politicians attacking each other on social media are in conversation with each other and the public. A comedian satirizing such politicians as engaging in performative politics and using drag performers as props in their campaign advertising is likewise part of that public conversation, as are journalists reporting on such things.[1] Drag performers are no different. They engage in competition and conversation with each other in ways that radically impact our culture.[2] Defendant's blindered view of speech imagines expression in its most base form, as a commodity to be sold rather than a "'a free marketplace of ideas, a marketplace that provides access to 'social, political, esthetic, moral, and other ideas and experiences.'" *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 583 (2011).

On May 17, 2023 Senate Bill 1438 was signed into law by Governor DeSantis, thereby enshrining the Act's prior restraints on speech into law. (see FN2.) The Act is performative and superfluous. As recognized by this Court in its Amended Order, Florida already has statutes that provide protection for children from obscene live performances. This Court determined that The Act was "specifically designed to suppress the speech of drag queen performers. (ECF 30 at

---

[1] https://www.orlandosentinel.com/2023/07/06/desantis-support-of-anti-gay-video-called-bad-strategy-worse-message/
[2] https://www.nytimes.com/2018/01/24/magazine/is-rupauls-drag-race-the-most-radical-show-on-tv.html

PageID 429.) This Court granted Plaintiff's motion and entered a preliminary injunction against Defendant Melanie Griffin, in her official capacity as Secretary of Florida Department of Business and Professional Regulation, and enjoined her "from instituting, maintaining, or prosecuting any enforcement proceedings" "under statutes amended and created by SB 1423, Sections 255.70(1)-(3), 509.25(10), 561.29(1), and 827.11." (ECF 30 at PageID 453.) This Court found The Act is unconstitutionally vague and overbroad, fails to survive strict scrutiny, is ambiguous, fails to show how the government used the least restrictive means available to achieve a compelling purpose, and punishes a substantial amount of protected free speech. The harm to Plaintiff was determined to be irreparable, while granting the preliminary injunction would not harm the public interest. (ECF 30 *supra*.)

Defendant appealed this Court's preliminary injunction to the Eleventh Circuit Court of Appeals and moves this Court for a stay as to the prohibition on enforcement against non-parties only.

## II. LAW AND ARGUMENT

Defendant argues that the preliminary injunction should not apply to anyone other than the parties to this case. As support, Defendant alleges that "Plaintiff faces no credible threat of enforcement from the challenged statute, . . ." (an odd argument considering the Defendant is not seeking a stay as to Plaintiff). She alleges that the preliminary injunction, as written, would permit nonparties who "may wish to expose children to live obscene performances in violation of the statute." (ECF 33 at PageID 493.) She also alleges that extending the preliminary injunction beyond Plaintiff "is beyond the Court's remedial authority." (Id.) Defendant cites little legal authority to support this position. Defendant's leading case is *Georgia v. President of the United States*, 46 F.4th 1283, 1303 (11th Cir. 2022), which does not support Defendant's contentions. (Id.

at PageID 495.) In *Georgia v. POTUS,* the Court addressed a *nationwide* injunction on the enforcement of a COVID vaccine mandate for federal contractors and states, a shockingly broad measure with *immediate* public health impacts during a global pandemic and public health emergency. *Id.* at 1304. The nuances of a suit regarding the application and executive authority under the Procurement Act are vast, complex, and totally inapposite in this case, but one central point is clear: The Eleventh Circuit upheld the nationwide injunction barring the federal government from considering a bidder's compliance with a contract due to the incidental effects on the parties. *Id.* at 1308. Courts do have power to impose preliminary injunctions that impact third parties, and most certainly do where the law is an unconstitutional infringement on speech. *See Ashcroft v. ACLU*, 542 U.S. 656 (2004) (upholding preliminary injunction barring enforcement of the Child Online Protection Act nationwide).

Defendant also ignores the special nature of First Amendment cases. The "overbreadth doctrine allows plaintiffs 'to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) (internal citations omitted). Such statutes are "totally forbidden until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'" *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1300 (11th Cir. 2017). Defendant cites *United States v. Nat'l Treasury Empls. Union*, 513 U.S. 454 (1995) for the proposition that, as a general rule, even where courts apply the overbreadth and chilling effect doctrines that relief should be narrowed only to the parties before the court. This is an odd case to cite for this proposition to be sure. *Nat'l Treasury Empls.* addressed a preliminary injunction

4

barring enforcement of a federal ban on all executive branch employees of any grade or rank from accepting payment for writing or speaking engagements regardless of whether there was a nexus with their actual employment. *Id.* at 477. The injunction on appeal applied to "all executive branch employees below GS-16," and the Plaintiff sought its expansion to include all federal employees including nonparty senior officials. The Court reasoned that those individuals' positions of authority might be justified by a purpose distinct from the sweeping prohibition on lower-level employees. (*Id.*) Those officials had also received a 25% pay increase to offset the ban. (*Id.*) Thus, the governmental interest in such a ban on nonparty senior officials receiving payments which could obviously be graft disguised as "honoraria" warranted the restriction of the injunction to "all executive branch employees below GS-16." Presumably, this case was the best authority Defendant could find in the First Amendment context since her only other citation to fully-reasoned authority is to Justice Alito's dissenting opinion in *United States v. Stevens*, 559 U.S. 460 (2010). When a party is reduced to citing dissents, their case is weak.

The Defendant then cites to the Eleventh Circuit's unpublished opinion in *Garcia v. Exec. Dir. Fla. Comm'n on Ethics*, No. 23-10872 (11th Cir. June 5, 2023). This order may have seemed mana from heaven to Defendant appearing, as it did, a mere twenty-three (23) days before the filing of Defendant's motion, but the Defendant cannot rely upon this order to sustain its position. Page citations are not necessary for the one-page order (excluding caption), and quoting it in its entirety may be instructive as it will fit on the balance of this page:

> Defendants-Appellants' motion to stay, in part, the district court's preliminary injunction is GRANTED. Neither the need to protect third parties, see Georgia v. President of the United States, 46 F.4th 1283, 1306 (11th Cir. 2022), nor the statewide as opposed to nationwide coverage of the injunction, see Wolf v. Cook County, Illinois, 140 S. Ct. 681 (2020), warrants its broad application to every "public officer," as that term is defined in article 2, section 8(f)(1) of the Florida Constitution, as amended. The district court ruled that Rene Garcia and Javier Fernandez were the only public officials in the lawsuit who had standing to

5

challenge the constitutionality of article 2, section 8(f)(2) of the Florida Constitution ("In-Office Restrictions"). Accordingly, we stay that part of the preliminary injunction barring enforcement of the In-Office Restrictions against public officials other than Garcia and Fernandez.

Other than a cursory concern about standing, there is no analysis from which this Court could determine whether yet another case involving a prohibition on public officials being paid for private sector services – in this case lobbying services – is in any way analogous to this case about the freedom of the public at large to engage in free, artistic expression without discrimination based on their viewpoint or gender and without reasonable notice of what expressive conduct is even prohibited.

As this Court has determined that The Act is likely unconstitutional, it makes no sense that the statute should be enforced in other parts of Orange County, Florida. The same response applies to Defendant's argument about the "chilling effect" of the statute, but even more so because drag, as an art form, is frequently commentary on and a reflection of the broader social conversation, including other drag performances. In a related vein, it is hard to imagine how drag performers themselves would not feel compelled to Disneyfy their performances generally, being unsure where and how this law applied. Plaintiff is a Hamburger Mary's franchisee, and other franchises exist within Orange County and Florida more broadly that host drag performances. How is a performer to be sure whether they are performing at the *one* Hamburger Mary's that is protected from enforcement of the Act? Thus, the free expression of Plaintiff's performers and, thus, Plaintiff is chilled. Defendant essentially behaves as though Plaintiff is asserting its right not to lose its liquor license. It is not. Plaintiff is asserting its right to be free from prior restraints on speech, and muting every other party to the broader artistic conversation inherently limits Plaintiff's speech.

Defendant's argument that "applying the injunction to nonparties is 'more burdensome to the defendant than necessary to provide complete relief to the plaintiffs'" is unaccompanied by

any explanation of what this burden is. (ECF 33 at PageID 495.) Without any citation whatsoever, Defendant states that it will suffer "the sovereign harm of having one of its laws enjoined." "Sovereign harms" are infringements on a state's interest "in its 'exercise of sovereign power over individuals and entities within the relevant jurisdiction,' which "involves the power to create and enforce a legal code.'" *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 268 (4th Cir. 2011). But while such an interest may confer standing, it does not automatically demonstrate immediate and irreparable harm, and here Defendant has put forward no evidence or argument that it would suffer harm, merely an *ipse dixit*. Butas this Court noted, Florida already has laws that protect children from the types of harm that Defendant flippantly asserts that the Act abjures. (ECF 30 at PageID 453.)

Defendant then claims that by restricting injunctive relief that this Court will compel other plaintiffs to bring suit and "encourage multiple judges to weigh in" on the issue and that this is an inherent good. This is not so much a statement of actual public interest as it is a discussion fit for a law school seminar. For this proposition Defendant cites Justice Gorsuch's concurrence in a shadow docket opinion about administrative rulemaking in the immigration context and the dissenting opinion to a Fifth Circuit interlocutory order denying a stay in yet another COVID-19 vaccine litigation case. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring); *Feds for Med. Freedom v. Biden*, 25 F.4th 354, 360 (5th Cir. 2022) (Higginson, J., dissenting). The Court need not take this argument seriously.

### III.     CONCLUSION

An attack on the fundamental right to free expression is an attack on society itself and implicates Plaintiff's interests beyond a mere liquor license. Defendant fails to articulate any way

7

in which she or the State of Florida will be harmed by the injunctive relief presently in place. For these reasons, this Court should DENY Defendant's motion.

Respectfully submitted,

*/s/ Brice M. Timmons*
Brice M. Timmons, Esq. *Pro Hac Vice*
Melissa J. Stewart, Esq. *Pro Hac Vice*
DONATI LAW, PLLC
1545 Union Ave.
Memphis, TN 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com

Gary S. Israel, Esq. 270709
121 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
407 210-3834
attorneyisrael@hotmail.com
gsi55@hotmail.com
Counsel for Plaintiff

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served upon all parties to this action via the court's ECF filing system this 10th day of June 2023.

*/s/ Brice M. Timmons*
