**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HM FLORIDA-ORL, LLC,

        Plaintiff,

v.                                            Case No: 6:23-cv-950-GAP-LHP

MELANIE GRIFFIN,

        Defendant

## ORDER

This cause is before the Court for consideration without oral argument on Defendant's Motion for Partial Stay (Doc. 33) and Plaintiff's Response in Opposition thereto (Doc. 36).

### I. Background

Florida Governor Ron DeSantis signed Senate Bill 1438 (the "Act") into law on May 17, 2023. *See* 2023 Fla. Laws ch. 2023-94. The Act created a new statute[1] — Fla. Stat. § 827.11 — prohibiting any person from knowingly admitting a child to an "adult live performance." Plaintiff HM Florida-ORL, LLC ("Plaintiff"), which

---

[1] The Act also amended three existing laws. *See* 2023 Fla. Laws ch. 2023-94; *see also* Fla. Stat. §§ 255.70(1)-(3), 509.26(10), and 561.29(1).

frequently presents drag show performances at its Hamburger Mary's Restaurant and Bar in Orlando, brought suit under 42 U.S.C. § 1983, alleging that the Act "seeks to explicitly restrict, or chill speech and expression protected by the First Amendment based on its content, its message, and its messenger." Doc. 1, ¶ 50.

On June 24, 2023, the Court entered its Amended Order granting Plaintiff's Motion for Preliminary Injunction, finding it likely that the Act could not survive strict scrutiny because it did not employ sufficient narrowly tailored means to further the state's compelling interest in protecting minors from obscene performances. Doc. 30 at 16-20. The Court also found it likely that the language of the Act, which included terms like "lewd conduct" and "lewd exposure of prosthetic or imitation genitals or breasts," was unconstitutionally vague and overbroad on its face. *Id.* at 20-24; *see also* Fla. Stat. § 827.11(1)(a). In its Order, the Court enjoined Defendant Melanie Griffin ("Defendant"), "in her official capacity as Secretary of the Florida Department of Business and Professional Regulation [("DBPR")]…from instituting, maintaining, or prosecuting any enforcement proceedings under the Act." Doc. 30 at 25. In other words, the Court temporarily enjoined Defendant's enforcement of a facially unconstitutional statute. *Id.*

By her motion, Defendant seeks to neuter the Court's injunction, restricting her enforcement only as to Plaintiff and leaving every other Floridian exposed to the chilling effect of this facially unconstitutional statute. *See* Doc. 33 at 1.

**II.     Legal Standard**

The Court may stay an injunction pending appeal to secure the opposing party's rights. Fed R. Civ. P. 62(d).[2] "In the case of a non-money judgment, whether a stay is warranted under Rule 62(d) depends upon: (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Venus Lines Agency v. CVG Industria Venezolana de Aluminio, C.A.*, 210 F.3d 1309, 1313-14 (11th Cir. 2000) (internal quotations omitted). "Considering that this test is so similar to that applied when considering a preliminary injunction, courts rarely stay a preliminary injunction pending appeal." *Honeyfund.com, Inc. v. DeSantis*, No. 4:22-cv-227-MW/MAF, 2022 WL 3486962, at *15 (N.D. Fla. 2022).

**III.     Analysis**

*A.  Likelihood of Success*[3]

---

[2] Appellate procedural rules ordinarily require parties to move for a stay in the district court before doing so in the appellate court. Fed. R. App. P. 8(a)(1).

[3] The Court notes at the outset that there is scant precedent addressing Defendant's argument seeking to limit the injunction only to her enforcement against the Plaintiff. The body of case law cited by Defendant primarily analyzes the appropriate scope of injunctive relief in the distinct contexts of nationwide injunctions, *see, e.g.*, Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 166 (2010), and those affecting private parties which do not involve facially unconstitutional violations of the First Amendment, *see, e.g.*, Grupo Mexicano de Desarrollo S.A. v. Alliance Bond

First, the Court considers whether Defendant "has made a strong showing that [she] is likely to succeed on the merits" of her motion to stay the injunction as to non-parties. *Venus Lines Agency*, 210 F.3d at 1313. Injunctive relief is generally restricted to the "extent necessary to protect the interests of the parties" and "limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Georgia v. President of the United States*, 46 F.4th 1283, 1303 (11th Cir. 2022) (quoting *Kenner v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003) and *Gill v. Whitford*, 138 S.Ct. 1916, 1931 (2018)). "The scope of injunctive relief is dictated by the extent of the violation established." *Georgia*, 46 F.4th at 1306 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

The Court has found that the Act likely "imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack." *Secretary of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 967-68 (1984). A statute subject to facial attack is likewise susceptible to facial enjoinment. *See Califano*, 442 U.S. at 702. This is especially so in the First Amendment overbreadth context because plaintiffs "are

---

*Fund, Inc.*, 527 U.S. 308, 318 (1999).

permitted to challenge a statute not [only] because their own rights of free expression are violated, but because…the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

Defendant argues that the Court does not have the authority to protect the constitutional rights of non-parties to this suit. Doc. 33 at 2. Apart from a distinguishable unpublished decision, however, she does not point to any precedent where a court has restricted a preliminary injunction of such a broadly applicable, facially invalid restriction on First Amendment speech to only the plaintiff(s). *See id*. at 3-6. This Act, unlike those in most of the cases cited by Defendant, has not merely been adjudged likely unconstitutional in a limited range of applications, and therefore capable of mitigation. *See, e.g.*, *Secretary of State of Md.*, 467 U.S. at 964-65. Rather, it was found likely to be unconstitutional on its face. *See* Doc. 30 at 15-16.

Plaintiff is not the only party suffering injury as a result of the passage of the Act; it has a chilling effect on all members of society who fall within its reach. Therefore, enjoining Defendant's enforcement of the statute against any party is the appropriate remedy. *See Broadrick*, 413 U.S. at 613 ("The consequence of our departure from traditional rules of standing in the First Amendment area is that *any enforcement of a statute thus placed at issue is totally forbidden* until and unless a limiting

construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.") (emphasis added).

In support of her argument to the contrary, Defendant contends that the Eleventh Circuit is "both weary and wary" of "universal" injunctions but cites primarily to cases invalidating nationwide injunctions on limited classes of persons. *See* Doc. 33 at 3; *see also, e.g., Georgia*, 46 F.4th at 1307-08. As the Court has previously explained, its injunction is neither nationwide, nor does it pertain only to a limited class of individuals. *See* Doc. 30 at 25. Defendant's citations to dicta in cases where the Eleventh Circuit discussed various district courts' perceived abuses of nationwide injunctions are simply inapposite. *See, e.g.*, Doc. 33 at 3 (citing *Georgia*, 46 F.4th at 1303 (focusing on the scope of the federal Procurement Act and how it pertained to a limited class of federal contractors) and *U.S. v. National Treasury Emp. Union*, 513 U.S. 454, 457 (1995) (analyzing a challenge to a federal ban on accepting compensation for public engagements brought by federal executive branch employees)). The parties and issues in the cases Defendant cites bear no resemblance to the instant dispute.

Defendant also cites to *Garcia et al v. Executive Dir., Fla. Comm'n on Ethics*, No. 23-10872, ECF No. 33 (11th Cir. June 5, 2023). However, *Garcia* is an unpublished decision and, as such, is not entitled to precedential effect. *Ray v. McCullough Payne & Haan, LLC*, 838 F.3d 1107, 1109 (11th Cir. 2016) ("In this Court, unpublished

decisions, with or without opinion, are not precedential and they bind no one.") (citing 11th Cir. R. 36-2 and collecting cases). That proposition is especially acute in *Garcia*, which contains no substantive analysis.[4] *Garcia,* slip op. at 1. Not only is *Garcia* unentitled to precedential effect, but it, too, deals only with a limited universe of potential plaintiffs: public officers. *Id.* The district court in that case had already adjudged some plaintiffs to have standing while others did not, further distinguishing the instant matter. *Id.* Although *Garcia* involved a First Amendment challenge based on overbreadth, the ban on lobbying by elected officials does not impact the vast majority of Floridians. *See* Complaint for Preliminary and Permanent Injunctions and Declaratory Judgment at 2, *Garcia et al v. Stillman et al*, No. 1:22-cv-24156-BB (S.D. Fla. December 21, 2022).

The Act here is not cabined to a limited, discrete class of people like the public officials in *Garcia,* or the federal contractors in *Georgia*. *See id.*; *Georgia,* 46 F.4th at 1289. To limit Defendant's enforcement of the Act only to Plaintiff would subject everyone else in Florida to the chilling effect of a facially unconstitutional statute. Consequently, a statewide injunction which includes non-parties accords with "the

---

[4] Like its own opinion, one of the two cases relied upon by the Eleventh Circuit contains no analysis whatsoever from which this Court might extract any substantive guidance. *See Garcia*, slip op. at 1 (citing *Wolf v. Cook Cnty., Ill.*, 140 S.Ct. 681(2020)).

extent of the violation established." *See Georgia*, 46 F.4th at 1303. Thus, Defendant is not likely to succeed on the merits of her Motion for Partial Stay.

   B. *Remaining Factors*

   **1. Irreparable Injury**

The other factors also weigh against Defendant's motion. First, Defendant has presented no evidence or compelling argument that she will suffer irreparable harm. *See* Doc. 33 at 6. Instead, she baldly proclaims that Florida "suffers a form of irreparable injury" any time it is enjoined from enforcing one of its statutes. *See id.* (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012)) (emphasis added). In *Maryland*, however, the Supreme Court's statement was supported by evidence of ongoing, concrete harm to law enforcement and public safety.[5] 567 U.S. at 1303. Defendant has presented no such support here. *See* Doc. 33 at 6. Her position that the state suffers irreparable harm any time it is enjoined from enforcing one of its statutes defies common sense and is not supported by any meaningful precedent. *Cf. Ex Parte Young*, 209 U.S. 123, 155-56 (1908) ("[I]ndividuals who, as officers of the

---

[5] The original quotation comes from a case approving the stay of an injunction which enjoined enforcement of a California law requiring auto dealers to give notice to their competitors when relocating or building new dealerships on Fourteenth Amendment due process grounds. *New Motor Vehicle Bd. of California v. Orrin W. Fox. Co.*, 434 U.S. 1345, 1347-48 (1977). The quotation lies at the end of a paragraph describing the ongoing and concrete harm California suffered from being prohibited from regulating new auto dealerships, and is qualified by the opening clause omitted from Defendant's citation: "It seems to me that…" *Id.* at 1351. Again, this case is inapposite here.

state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten…to enforce against parties affected an unconstitutional act…may be enjoined by a Federal court of equity from such action."); *see also Green v. Mansour*, 474 U.S. 64, 68 (1985) ("*Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent continuing violation of federal law.").

**2. Balance of Harms**

The balance of harms weighs heavily in favor of protecting Floridians from this unconstitutional statute. On one hand, for the other interested parties—*i.e.*, all Floridians—"[t]here is a potential for extraordinary harm and a serious chill upon protected speech." *Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 671 (2004). Indeed, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparably injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Conversely, the harm to Defendant if her motion is denied is minimal. She complains that the "portion of the injunction that applies to nonparties threatens Florida," but constitutionally valid statutes already exist to further the state's compelling interest in protecting minors from exposure to obscene exhibitions. *See* Doc. 33 at 2; *see also Ashcroft*, 542 U.S. at 670-71 ("[I]f the injunction is upheld, the Government in the interim can enforce obscenity laws already on the books."). For

instance, Fla. Stat. § 847.013 prohibits the exposure of minors to obscene "motion pictures, exhibitions, shows, presentations, or representations."

Moreover, inconsistencies between the Act and statutes like Fla. Stat. § 847.013(3)(c)—which allows minors to view films that include obscene content with parental consent—further undercut Defendant's cries of harm. *See also* Fla. Stat. § 1014 *et seq* (the "Parents' Bill of Rights," which reserves the right of parents to direct the moral upbringing of their children). She slyly argues that any potential parties experiencing a chill "have the tools" to challenge the statute in their own right, yet the Supreme Court has long recognized that, "[w]here a prosecution is a likely possibility…speakers may self-censor rather than risk the perils of trial." *Ashcroft*, 542 U.S. at 670-71; *see also Broadrick*, 413 U.S. at 612. Defendant's suggestion that any other harmed parties should bear the cost and delay of litigating their free speech rights simply does not comport with First Amendment principles. All of these harms weigh heavily in favor of protecting non-parties from enforcement of this unconstitutional statute.

### 3. Public Interest

Protecting the right to freedom of speech is the epitome of acting in the public interest. It is no accident that this freedom is enshrined in the *First* Amendment. This injunction protects Plaintiff's interests, but because the statute is facially unconstitutional, the injunction necessarily must extend to protect all Floridians.

" '[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn.' Error in marking that line exacts an extraordinary cost." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 817 (2000) (quoting *Speiser v. Randall*, 357 U.S. 513, 525 (1958)). Any prejudice suffered by Defendant here is *de minimis* and does not warrant risking the dangerous exposure of the public's interest in free speech to that "extraordinary cost." *See id.* Therefore, the public interest is best served by preserving this Court's injunction enjoining Defendant's enforcement of the Act against any party.

## IV. Conclusion

Accordingly, it is **ORDERED** that Defendant's motion for partial stay is hereby **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on July 19, 2023.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties