United States District Court
Middle District of Florida
Orlando Division

HM FLORIDA-ORL, LLC,

      Plaintiff,　　　　　　　　　　　　　　　　Case No. 6:23-cv-00950-GAP-IRHP

v.

MELANIE GRIFFIN,

      Defendant

---

## FIRST AMENDED COMPLAINT

### I.　　NATURE OF THE ACTION

1.　　This action is brought under 42 U.S.C. § 1983 and is premised on the First and Fourteenth Amendments to the United States Constitution

### II.　　SUBJECT MATTER AND JURISDICTION

2.　　This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 on the grounds that the claims asserted herein arise under U.S.C. §§ 1983 and 1988.

3.　　Venue is proper in this Court and Division pursuant to 28 U.S.C. § 1391 on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

### III.　　THE PARTIES AND PERSONAL JURISDICTION

4.　　Plaintiff, HM FLORIDA-ORL, LLC, is a Florida limited liability company, registered in the State of Florida in Orlando, Florida since 2008. Plaintiff is a restaurant and bar which serves alcohol and presents drag show performances, comedy sketches, and dancing.

5.      Defendant MELANIE GRIFFIN (hereinafter "Defendant" or the "State") is the Secretary of the State Department of Business and Professional Regulation for the state of Florida. She is sued in her official capacity and individual capacity. Defendant GRIFFIN may be served with process at her office, 2601 Blairstone Rd, Tallahassee, FL 32399.

## IV.     FACTUAL ALLEGATIONS

6.      In December 2022, the State of Florida began administrative proceedings with the Department of Business and Professional Regulation against businesses for violating public nuisance, lewd activity and disorderly conduct laws.[1]

7.      Two of the businesses, a hotel and a performing arts center, both hosted an event entitled, "A Drag Queen Christmas." The third business was a restaurant that hosted a drag queen weekend brunch. DBPR is seeking to revoke the liquor licenses of these businesses.[2]

8.      The venues are accused to failing to provide notice of the "sexually explicit nature of the performance" DBPR alleges that drag shows are tantamount to "lewd exhibition, operating a lewd establishment, public exposure, obscene exhibition, breach of the peace and public nuisance." The case is pending.[3]

---

[1] Tampa Bay Times, Ana Ceballos and Joey Flechas, *Florida goes after liquor license of Miami hotel over drag show,* March 14, 2023, https://www.tampabay.com/news/florida-politics/2023/03/14/drag-queen-minors-liquor-license- lgbtq-hotel-miami/

[2] Administrative Complaint, *Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco, Petitioner, v. HRM Owner, LLC, d/b/a Hyatt Regency Miami,* March 14, 2023

[3] The statutes that were allegedly violated and listed in the complaint were: Lewd or lascivious exhibition in the presence of a minor less than 16 years of age (s. 800.04{7)(a), F.S.); Operation of any place, structure, building, or conveyance for the purposes of lewdness (s. 796.07(2)(a0, F.S.); The unlawful exposing or exhibiting of one's sexual organs in public or on the private premises of another in a vulgar or indecent manner (s. 800.03, F.S.); Knowingly promoting, conducting, performing, or participating in an obscene show, exhibition, or performance by live persons or a live person before an audience (s. 847.011(4), F.S.; Breach of the peace and disorderly conduct with acts that are of such nature as to corrupt the public morals, or outrage the sense of public decency (s. 877.03, F.S.); and Maintaining a nuisance by erecting or maintaining a structure that tends to annoy the community or injure the health or the community, or becomes manifestly injurious to the morals or manners of the people (s. 8230.5(1), F.S.)

9. On May 17, 2023, Governor DeSantis signed Senate Bill 1438 into law (hereinafter "S.B. 1438" or "the Act"). The Act amended FL. Stat. § 509.261 to include the following provisions:

> **(10)(a) The division may fine, suspend, or revoke the license of any public lodging establishment or public food service establishment if the establishment admits a child to an adult live performance, in violation of s. 827.11.**
>
> **(b) A violation of this subsection constitutes an immediate serious danger to the public health, safety, or welfare for the purposes of s. 120.60(6).**
>
> **(c) Notwithstanding subsection (1), the division may issue a $10,000 fine for an establishment's second or subsequent violation of this subsection.**

Paragraph (1) of FL. Stat. § 561.29 was amended to include the following language:

> **Revocation and suspension of license; power to subpoena.**
>
> **(1) The division is given full power and authority to revoke or suspend the license of any person holding a license under the Beverage Law, when it is determined or found by the division upon sufficient cause appearing of:**
>
> **(l) Maintaining a licensed premises that admits a child to an adult live performance in violation of s. 827.11.**
>
> > **1. A violation of this paragraph constitutes an immediate, serious danger to the public health, safety, or welfare for the purposes of s. 120.60(6).**
> >
> > **2. The division may issue a $5,000 fine for a first violation of this paragraph.**
> >
> > **3. The division may issue a $10,000 find for a second or subsequent violation of this paragraph.**

FL. Stat. § 827.11 was created to read:

**Exposing children to an adult live performance**

> **(1) As used in this section, the term:**
>
> > **(a) "Adult live performance" means any show, exhibition, or other presentation in front of a live audience which, in whole or in part, depicts or simulates nudity, sexual conduct, sexual excitement, specific sexual activities as those terms are defined in s. 847.011, lewd conduct, or the lewd exposure of prosthetic or imitation genitals or breasts when it:**

3

> 1. Predominantly appeals to a prurient, shameful, or morbid interest;
> 2. Is patently offensive to prevailing standards in the adult community of this state as a whole with respect to what is suitable material or conduct for the age of the child present; and
>
> 3. Taken as a whole, is without serious literary, artistic, political, or scientific value for the age of the child present.
>
> (b) Knowingly" means having general knowledge of, reason to know, or a belief or ground for belief which warrants further inspection or inquiry of both:
>
> 1. The character and content of any adult live performance described in this section which is reasonably susceptible of examination by the defendant; and
>
> 2. The age of the child.
>
> **(2) A person's ignorance of a child's age, a child's misrepresentation of his or her age, or a bona fide belief of a child's consent may not be raised as a defense in a prosecution for a violation of this section.**
>
> **(3) A person may not knowingly admit a child to an adult live performance.**
>
> **(4) A violation of subsection (3) constitutes a misdemeanor of the first degree, punishable as provided in § 775.082 or § 775.083.**

13. Plaintiff's restaurant, HAMBURGER MARY'S, has presented drag performances at its venue since 2008.

14. Drag is defined as "clothing more conventionally worn by the other sex, especially exaggeratedly feminine clothing, makeup, and hair adopted by a man." [4]

15. Drag is usually performed as entertainment and often includes comedy, singing, dancing, lip-syncing, or all of the above. Prosthetic breasts are commonly used by men impersonating women as part of the art.

---

[4] *Drag,* OxfordlearnersDictionary.com, https://www.oxfordlearnersdictionaries.com/us/definition/english/drag (last visited March 25, 2023)

4

16. Drag is not a new art form; nor is it inherently - or even frequently - indecent. Drag has been present in western culture dating back to Ancient Greek theatrical productions, where women were often not permitted to perform onstage or become actors. Instead, male actors would don women's attire and perform the female roles.[5]

17. The earliest productions of William Shakespeare's plays also featured male actors in drag playing the female roles. By the 1800s, "male or female impersonation" was known as "drag".[6]

18. The vaudeville shows of the late 1800s and early 1900s popularized drag, or "female impersonators."[7] One of the most well-known vaudeville female impersonators, Julian Eltinge, made his first appearance on Broadway in drag in 1904.[8]

19. By 1927, drag had become specifically linked with the LGBTQIA community, and by the 1950s, drag performers began entertaining in bars and spaces that specifically catered to gay people. In the decades that followed, drag solidified itself as an art form.[9]

20. Although drag is still centered around and holds special historical significance for the LGBTQIA community, the art form is now definitely a part of mainstream culture. One is as likely to find straight people at a drag show as gay people. RuPaul's Drag Race - a drag competition

---

[5] Ken Gewertz, *When Men Were Men (and Women, Too),* The Harvard Gazette (July 17, 2003), https://news.harvard.edu/gazette/story/2003/07/when-men-were-men-and-women-too/

[6] Lucas Garcia, *Gender on Shakespeare's State: A Brief History,* Writer's Theatre, (November 21, 2018), https://www.writerstheatre.org/blog/gener-shakespeares-stage-history/

[7] Nan Alamilla Boyd, Wide Open Town: A History of Queer San Francisco to 1965, University of California Press, 2003.

[8] Michael F. Moore, Drag! Male and Female Impersonators on State, Screen, and Television: An illustrated World History, McFarland & Company, 1994.

[9] Nan Alamilla Boyd, *Wide Open Town: A History of Queer San Francisco to 1965*, University of California Press, 2003.

5

television show - has won seven Emmy Awards and is currently in its fifteenth season. The show has spinoffs in the UK, Australia, Chile, Thailand, Canada, Italy, Spain, and elsewhere.

21. Like all forms of performance art, drag encompasses a vast spectrum of expression. Every drag performer makes unique choices about attire, choreography, comedy, and music which can range from a performer in a floor-length gown lip-syncing to Celine Dion songs and making G- rated puns, to the Rocky Horror Picture Show, to sexual innuendo and the kind of dancing on could expect to see at a Taylor Swift or Miley Cyrus concert.

22. Modern drag performances typically do not contain nudity. More often than not, drag performers wear more clothing than one would expect to see at a public beach, and many drag shows are intended to be appropriate for all ages.

23. Undercover state agents were sent by the administration of Republican Florida Gov. Ron DeSantis to spy on an Orlando drag show- and they found nothing "lewd" about it, according to the Miami Herald. Yet, Florida has moved to revoke the venue operator's liquor license, alleging in an official complaint that the venue violated state law "by allowing performers to expose genitals in a lewd or lascivious manner and by conducting acts simulating sexual activity in the presence of children younger than 16 years of age."

24. Undercover agents who attended the December 28, 2022 show titled, "A Drag Queen Christmas." at Orlando's Plaza Live recorded the performance on their state-issued iPhone's and spotted three children at the drag show, according to the Herald, which obtained and published an incident report from the agents. "Besides some of the outfits being provocative (bikinis and short shorts), agents did not witness any lewd acts such as exposure of genital organs," the agents

6

wrote in their report, according to the newspaper. "The performers did not have any physical contact while performing to the rhythm of the music with any patrons."[10]

25. It is apparent from the actions of the State of Florida that it considers drag shows to be a public nuisance, lewd, disorderly, sexually explicit involving public exposure and obscene and that it is necessary to protect children from this art form, in spite of evidence to the contrary. Such is the Summary Analysis of the Florida Senate when it passed the law signed by Governor Desantis.

26. Florida already has laws preventing exposure of minors to lewd, sexually explicit, obscene, vulgar or indecent displays. *See generally*, FL. Stat. Chapter 847.

27. The Act, as passed, intends to use the FDBP to revoke or suspend the licenses of businesses if it admits a child to an adult live performance, in violation of § 827.1113 It reads: (l0)(a) The division may fine, suspend, or revoke the license of any public lodging establishment or public food service establishment if the establishment admits a child to an adult live performance, in violation of § 827.11. (b) A violation of this subsection constitutes an immediate serious danger to the public health, safety, or welfare for the purposes of § 120.60(6).

28. Plaintiff's business relies on drag performances to bring in business. Its performances are open to all ages, and many of its patrons are families. Parents and grandparents frequently dine at Hamburger Mary's with their children.

29. The Act is incredibly broad, prohibiting "lewd conduct" and "lewd exposure of prosthetic or imitation genitals or breasts," without defining "lewd" anywhere in the law. Plaintiff cannot know what conduct would run afoul of such a vague prohibition.

---

[10] *DeSantis Admin Sent Undercover Agents to Drag Show, Found Nothing 'Lewd'* (businessinsider.com) https://www.businessinsider.com/desantis-florida-undercover-agents-drag-show-found-nothing-lewd-2023-3

7

30. Because Plaintiff's business model revolves around its drag shows, its performers frequently wear prosthetic breasts, as is common in the art of drag.

31. Plaintiff is reasonably concerned that its future performances will violate the law.

32. Upon the announcement that S.B. 1438 had been signed and the law was in effect, Hamburger Mary's advised its customers that children would not be permitted to attend any drag shows, except a single, Sunday afternoon show aimed at very young children. The Sunday show usually includes material from Disney and other, similar media intended for small children.

33. Immediately, 20% of Plaintiff's bookings cancelled for the May 21, 2023 show and for future bookings.

34. The Act has forced Plaintiff to either heavily censor its shows, or else impose age limitations on who may attend, depriving Plaintiff of both revenue and of its First Amendment rights to free speech and expression.

35. Plaintiff simply cannot take the chance that their business or liquor licenses would be suspended for hosting a drag show where children attend.

36. In addition, the criminal penalties of the law put Plaintiff's individual performers at risk of prosecution because of the content of their speech.

## V.   CAUSES OF ACTION

### COUNT 1 -   VIOLATION OF 42 U.S.C. SECTION 1983
### FIRST AMENDMENT

37. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

38. As alleged above, the Act is an unconstitutional violation of the First Amendment both on its face and as applied for the following reasons.

8

39. *First*, Defendant seeks to restrict protected, First Amendment speech based on its content and message. The fact that drag may contain elements of non-obscene sexuality does not dispel First Amendment protections. *See, e.g., Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 557 (1975).

40. S.B. 1438 is a content-based restriction. As such, it is therefore "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). That is, strict scrutiny.

41. S.B. 1438 fails strict scrutiny. Its sweeping effect is divorced from any real purpose. It is broad enough to encompass a wide variety of performances that are not harmful to minors, and removes from parents any freedom to decide what appropriate performances might be. Nor is the law narrowly tailored. It is broad enough to encompass even the most innocuous drag performances and provides virtually no standards by which to determine its scope in practice.

42. *Second*, S.B. 1438 is facially overbroad. A law is facially overbroad and violates the First Amendment when it sweeps in more speech than is necessary to satisfy the state's interest, regulating both protected and unprotected speech. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973).

43. S.B. 1438 goes far beyond obscenity and reaches protected speech such as drag, as well as concerts, dancing, theater, etc. The unprotected speech that S.B. 1438 reaches—obscenity—is already proscribed by numerous statutes in Florida law and so the broad sweep of S.B. 1438 targets protected expression directly.

44. The Act also opens up any establishment - or even a private home - that hosts drag shows to police raids, so law enforcement can be certain that no children are present at the event.

45. The law is therefore facially overbroad and impinges on the rights of Plaintiffs and countless others across Florida. Such an overbroad law violates the First Amendment and will have a chilling effect on the protected speech of citizens.

46. ***Third,*** and in the alternative, S.B. 1438 was adopted for an impermissible purpose. The text of Fla. Stat. § 827.11 demonstrates that the Act was "adopted by the government because of disagreement with the message the speech conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). While many terms in the Act appear elsewhere in the Florida code, "lewd exposure of prosthetic or imitation genitals or breasts" is unique to the Act. There are two primary categories of people who wear prosthetic breasts: people who have had mastectomies and drag performers. Since the Act specifically regulates "any show, exhibition, or other presentation in front of a live audience," the law is obviously targeted at the conduct of *performers* who wear prosthetic breasts. It impermissibly target targets drag performers.

## COUNT TWO: 42 U.S.C. § 1983
## FOURTEENTH AMENDMENT DUE PROCESS (VAGUENESS)

47. Plaintiffs incorporate all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

48. A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted).

49. S.B. 1438 is unconstitutionally vague, as it is impossible to determine from the text of the statute what conduct is prohibited. The statute encompasses "lewd conduct," but nowhere in the text of the law is "lewd" defined.

50. The statute also prohibits "lewd exposure of prosthetic or imitation genitals and breasts," but "lewd exposure" is undefined. Does prosthetic cleavage, common at drag shows, qualify as "lewd exposure?"

51. Plaintiff is left without any certainty as to whether it or its performers may face criminal or civil penalties for engaging in an array of expressive activities, or whether the penal activity may vary across the state. As such, S.B. 1438 is unconstitutionally vague.

### COUNT THREE: 28 U.S.C. § 2201 DECLARATORY JUDGMENT

52. Plaintiff incorporates all allegations of fact in all preceding paragraphs as if fully set forth in this Count.

53. 28 U.S.C. § 2201(a) provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]"

54. This case presents an actual controversy between the Plaintiff and Defendant as to whether Plaintiff has a First Amendment right to engage in expressive activity. As alleged, Plaintiff's claims S.B. 1438 violates its First Amendment rights.

55. Plaintiff seeks a declaration that S.B. 1438 violates the Constitution on its face.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant on each Count of the Complaint and prays for the following relief:

1. That the Defendant be permanently enjoined from enforcing S.B. 1438;

2. That this Court declare that S.B. 1438 violates the Constitution on its face;

3. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure.

4.        Grant the Plaintiff such further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Melissa J. Stewart*
Melissa J. Stewart, Esq. *Pro Hac Vice*
Brice M. Timmons, Esq. *Pro Hac Vice*
DONATI LAW, PLLC
1545 Union Ave.
Memphis, TN 38104
(901) 278-1004 – Telephone
(901) 278-3111 – Facsimile
brice@donatilaw.com


Gary S. Israel, Esq. 270709
121 S. Orange Avenue, Suite 1500
Orlando, Florida 32801
407 210-3834
attorneyisrael@hotmail.com
gsi55@hotmail.com
Counsel for Plaintiff

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing document has been served upon all parties to this action via the court's ECF filing system this 11th day of August 2023.

                                                          */s/ Melissa J. Stewart*