UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| HM FLORIDA-ORL, LLC,<br>    Plaintiff,<br>v.<br>MELANIE GRIFFIN, in her official capacity as Secretary of the Department of Business and Professional Regulation, State of Florida,<br>    Defendant. | No. 6:23-cv-00950-GAP |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Hamburger Mary's ("HM's") response to the Secretary's motion for summary judgment continues to miss the mark.

1. To show standing, HM says it intends to admit children to shows that arguably contravene the age-variable obscenity standard in the Protection of Children Act (the "Act"). *See* DE62 at 3. Yet from its verified complaint through its brief in response to the Secretary's motion, HM has insisted that it is "family friendly" (DE1 at 6 ¶ 12) and "family-oriented" (DE62 at 10). The only evidence HM offers to support its claim that its shows arguably violate the Act is that its performers "wear prosthetics," some shows could be considered "R-rated," and some shows "might not be appropriate for every child." DE62 at 3. That is not enough. The statute does not prohibit "wear[ing] prosthetics"—just the lewd exhibition of prosthetics to children in a manner obscene for children. Fla. Stat. § 827.11(1)(a), (3). And HM has offered no evidence to show what it means that some shows are "R-rated" or "might not be

appropriate for every child." Without evidence of the content of its shows, HM cannot meet its burden to establish standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563–64 (1992) ("[R]espondents had to submit affidavits or other evidence showing, through specific facts" that they would suffer "'imminent' injury.").

2. HM continues to argue, mystifyingly, that the Act restricts the speech rights of adults and not just children. DE62 at 5, 7. It bases this claim on a misapplication of *Ashcroft v. ACLU*, 542 U.S. 656 (2004) ("*Ashcroft II*"). As HM itself notes, *Ashcroft II* held that the Child Online Protection Act "was a content-based regulation" because it "'effectively suppresse[d] a large amount of speech that adults have a constitutional right to receive and address *to one another*.'" DE62 at 6–7 (quoting *Ashcroft II*, 542 U.S. at 665 (emphasis added)). The Act here does no such thing. It restricts only the right of adults to address speech *to children*—and then only speech *obscene for children* of the age in question. HM may continue to host "adult live performances," and any adult may continue to attend those performances, as long as the adult is not accompanied by children for whom the performance would be obscene.

The Act imposes a restriction equivalent to the filtering software the Supreme Court identified as a less restrictive, constitutional alternative to the unconstitutional restriction in *Ashcroft II*. Software filters that adults could turn off and on were less restrictive than the content-based restriction in COPA because they would allow "adults without children [to] gain access to speech they have a right to see without having to identify themselves or provide their credit card information." *Ashcroft II*, 542 U.S. at 667. "Even adults with children [could] obtain access to the same speech

2

. . . simply by turning off the filter on their home computers." *Id*. The same is true of the Act here, because it operates in the physical world where "geography and identity" enable a proprietor like HM to exclude children without limiting any adult access to adult live performances. *Reno v. ACLU*, 521 U.S. 844, 889 (1997) (O'Connor, J., concurring in judgment in part and dissenting in part). HM has yet to identify any speech that the Act prevents adults from delivering to other adults.

HM accuses the Secretary of "transform[ing]" *Ginsberg v. New York*, 390 U.S. 629 (1968), into a holding that materials obscene for children are also obscene for adults. DE62 at 8. Far from it. Again, adults can continue to attend all of HM's "adult live performances." Contrary to HM's blinkered view of the case, *Ginsberg* applied rational-basis review precisely because "obscenity is not protected expression." 390 U.S. at 641. The Court determined that to uphold New York's statute "defining" materials obscene for minors under 17, it need only "say that it was not irrational for the legislature to find that exposure to material condemned by the statute is harmful to minors." *Id*. at 642–43. The Eleventh Circuit also understands *Ginsberg* to hold that "a state may deny minors access to materials acceptable for adults but obscene for minors" and may "deny minors all access *in any form* to materials obscene as to them" "absent an impermissible burden on adults." *Am. Booksellers v. Webb*, 919 F.2d 1493, 1501 (11th Cir. 1990). It is true that *Ginsberg* did not address the case where "the government's protection of minors burdens (even indirectly) adults' access to material protected as to them." DE62 at 8 (quoting *Webb*, 919 F.2d at 1501). That

3

was the issue in *Ashcroft II*. But again, the Act does not burden any adult-to-adult speech, consistent with *Ashcroft II*, and HM fails to show otherwise.

For this reason, even if strict scrutiny somehow applied to the Act, the Act would survive it. Contrary to HM's contention, DE62 at 14, the Act's mens rea requirement is "functional" and does not defeat its careful tailoring. The Act proscribes "knowingly admit[ting] a child to an adult live performance," Fla. Stat. § 827.11(3), and prohibits relying on "ignorance of a child's age, a child's misrepresentation of his or her age, or a bona fide belief of a child's consent" as a defense, *id*. § 827.11(2). HM argues that this provision "creates a strict liability offense as to the age of the child present" and thus is not narrowly tailored. DE62 at 12. This is wrong. A defendant must "knowingly" violate the Act, which includes having "reason to know, or a belief or ground for belief which warrants further inspection or inquiry," of the nature of the adult live performance and the age of the child. § 827.11(1)(b). The ignorance-is-no-defense provision merely reinforces that a defendant could be liable if he had reason to know or reason to believe that the child was too young to view the show but lacked full certainty. It does not negate the mens rea requirement, under which knowledge or constructive knowledge is necessary for an offense.

3. HM attempts to distinguish *Chesebrough v. State*, 255 So. 2d 675 (Fla. 1971), as a case of as-applied vagueness, in which what qualified as lewd "was understandably less opaque" because the term was being applied to the exhibition of "sexual intercourse . . . to a fourteen-year-old." DE62 at 16–17. In so doing, HM effectively concedes that the term "lewd" has a discernible meaning at its core, which dooms its

4

facial vagueness challenge. As the Supreme Court has emphasized, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)). "'[S]tatutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language,' and there is a strong presumption supporting the constitutionality of legislation." *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)).

    4. HM contends finally that a universal injunction can be justified because "overbreadth doctrine is concerned not only with the parties before the court, but with a chilling effect on society as a whole." DE62 at 20. This is true only in the sense that a plaintiff to whom the statute in question may be applied constitutionally may nevertheless obtain relief *for that plaintiff* based on the substantial number of third parties to whom the statute would apply unconstitutionally. As the Supreme Court recently reaffirmed in *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024), it remains the case that "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Id.* at 923 (Gorsuch, J., concurring, joined by Thomas & Alito, JJ.). The universal injunction in that case defied this "foundational principle[]" by barring the enforcement of "'any provision' of the law against anyone." *Id*. The Supreme Court accordingly stayed that injunction pending certiorari. Justice Kavanaugh, joined by Justice Bar-

rett, also voted to stay, agreeing that "the State ha[d] a likelihood of success on that issue." *Id*. at 933 n.4. If this Court denies the Secretary's motion, it should still heed *Labrador* and limit any relief to HM.

Neither the Eleventh Circuit motions panel that denied a stay of the preliminary injunction in this case nor the Supreme Court in denying a stay pending certiorari have contradicted this position. The motions panel cited a "division of authority in both the Supreme Court and in this circuit" concerning whether overbreadth was an exception to the general rule of constraint in equitable relief. *HM Fla.-ORL, LLC v. Gov'r of Fla.*, No. 23-12160, 2023 WL 6785071, at *4 (11th Cir. Oct. 11, 2023). It thus declined to find an abuse of discretion and did not reach the overbreadth question. *Id.* The dissenting judge, on the other hand, did reach the overbreadth question and still concluded that the injunction should have been narrowed to the plaintiff pending appeal. *Id.* at *4–6 (Brasher, J., dissenting). Three Supreme Court justices would have done the same. *Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1 (2023). The two Justices who were unwilling to supply the fourth and fifth votes for the stay cited "doctrinal complexities" as a reason to hold off on certiorari and so left the overbreadth question for another day. *Id.* at 2 (Kavanaugh, J., joined by Barrett, J.). Neither court endorsed HM's contention that overbreadth is a special exception to traditional principles of equity. There is simply no reason to treat facial overbreadth differently than any other facial challenge in terms of the appropriate scope of relief. *See HM Fla.-ORL*, 2023 WL 6785071, at *5 (Brasher, J., dissenting).

## CONCLUSION

For these reasons, the Court should either dismiss this case for lack of subject-matter jurisdiction or grant the Secretary summary judgment on all of HM's claims.

Respectfully submitted,

ASHLEY MOODY
  ATTORNEY GENERAL

Henry C. Whitaker (FBN 1031175)
  SOLICITOR GENERAL

Jeffrey Paul DeSousa (FBN 110951)
  CHIEF DEPUTY SOLICITOR GENERAL

Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
(850) 414-3300
(850) 414-2672 (fax)
Nathan.Forrester@myfloridalegal.com

April 30, 2024

*Counsel for Defendants*

  */s/ Nathan A. Forrester*
\* Nathan A. Forrester (FBN 1045107)
  SENIOR DEPUTY SOLICITOR GENERAL

Bridget K. O'Hickey (FBN 1048521)
  ASSISTANT SOLICITOR GENERAL

William H. Stafford III (FBN 70394)
  SPECIAL COUNSEL

\* *Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2024, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

  */s/ Nathan A. Forrester*
Senior Deputy Solicitor General